## BERRY et ux. v. BROWN et al.

(Court of Civil Appeals of Texas. Texarkana. May 16, 1912. Rehearing Denied June 13, 1912.)

1. WILLS (§ 163*)—UNDUE INFLUENCE—BURDEN OF PROOF.

The burden is on contestants of a will to show that it was executed under undue influence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 388–402; Dec. Dig. § 163.*]

2. WILLS (§ 166*)—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY.

In a will contest, evidence *held* insufficient to show undue influence over testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437; Dec. Dig. § 166.*]

3. WILLS (§ 166*)—UNDUE INFLUENCE—EVIDENCE.

Undue influence over testator is not shown by the fact that he did not divulge the terms of the will, nor because he gave all his property to one of two children, nor because he received attention and services from a beneficiary in sickness, nor will opportunity to exert undue influence warrant a finding of its exercise.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437; Dec. Dig. § 166.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Will contest by Alice Florence Brown and another against T. B. Berry and another. Judgment for contestants, and the contestees appeal. Reversed and rendered.

On October 23, 1908, J. B. McDaniel executed a will in formal compliance with the requirements of the statute, by the terms of which he devised his property, of the value of about $4,000, to his daughter Mrs. Lucy Berry during her lifetime, and to her husband at her death if he should survive; and, if the husband did not survive, then the property was to pass to the children of Mrs. Berry at her death. The testator died September 3, 1909, aged about 63 years. On the 5th day of October, 1909, the will was

duly probated in the county court. In 1910 Mrs. Alice Florence Brown, another daughter of the deceased, joined by her husband, brought a suit in the county court to have the former order probating the will set aside and to declare the will void, alleging as grounds therefor that the will was not executed by the deceased or by his authority, and that the will was procured to be executed by undue influence on the part of the beneficiaries upon the testator. In the county court the appellants recovered a judgment by which the court refused to set aside the order probating the will. From that judgment the appellees appealed to the district court, where, in accordance with the verdict of a jury on two special issues, judgment was entered setting aside the order probating the will, and denying that the will be entitled to be probated. The mental capacity of the testator to make a will was not made an issue by pleadings nor evidence, but was fully established by the evidence. The proof fully sustains the finding of the jury that the testator executed the will. The evidence wholly fails to show that the execution of the will was procured by undue influence on the part of the beneficiaries named in the will, or either of them; and we conclude as a fact that the execution of the will was not procured by undue influence on the part of the beneficiaries named in the will.

Lasseter & McIlwaine and C. O. Griggs, all of Tyler, for appellants. W. F. Boyette and B. B. Beaird, both of Tyler, for appellees.

LEVY, J. (after stating the facts as above). [1-3] The appellants, the beneficiaries named in the will, by their assignments contend that the evidence fails to show that the will was procured by undue influence, and that it was error to set aside the order probating the will. The burden of proving that the will was executed under undue influence was on the appellees, the contestants. And as to whether or not the evidence offered in this respect by the contestants was sufficient under the rules of law to present an issue of fact must depend, as each particular case must do, upon what the particular facts and circumstances show or fairly tend to show. Circumstances alone were relied upon to show undue influence. The evidence offered went to show that when the mother died the two daughters were very young. The father and the two daughters thereafter constituted the family. There was a difference of two years in the ages of the sisters. The father ran a store located on the same lot as the residence. As the two children grew up the older daughter performed the household duties, and the younger daughter assisted her father in the work of the store. When the older daughter arrived at the age of 18 years she married. The evidence shows that the father bitterly opposed the marriage, and refused to permit the daughter or her husband to come to the house, and refused to have anything to do with them. The father's feeling of dislike and opposition to the husband appears to have been extreme and obstinate, and continued so till his death about 12 years afterwards. It also appears that the younger sister at this same time entertained hard feelings toward her sister because of personal differences between them, and frequently gave vent to her feelings. This mental condition of affairs continued in the family for about three years, when a divorce was obtained by the older daughter from her husband. Very shortly after the divorce was granted, the father sent for his daughter, and had her make his house her home. The younger sister, it appears, became offended at her sister's returning home, and left home, and went to stay in another town with a relative. After she had been gone about three weeks, the father sent for her and she returned. The father and two daughters and a female cousin then lived together for six years. It appears that the two sisters during that time were not congenial companions. There is no evidence that the feelings of the sisters toward each other were of a character to affect the father, or that he manifested any greater affection for the one over the other, or was influenced against his will by either of them. After remaining about six years at the home, the older daughter again married, and she and her husband thereafter lived at their own home. It appears that the father objected to this marriage, and disliked the husband, and expressed his feelings in this regard. In 1907 the younger daughter married, and the father urged that they remain at his home, which they did until the father died several years afterwards. About a month after her marriage the younger daughter and her cousin, who was living at the home, had a difference, and at her request the father had the cousin find another abode. It does not appear that the father took any more concern in this affair. In 1906, previous to the younger daughter's marriage, the father was attacked with rheumatism, which gradually grew more severe. He at times could not attend the store, and his younger daughter managed the business for him. He later closed out the business and retired, and continued to live at his home with his younger daughter and her husband. His ailment grew to where he sought, in 1907, a surgical operation. About six weeks after the surgical operation the father executed the will in suit. On the day the will was executed the father and the younger daughter were, it appears, talking in a general way, when the daughter asked the father if he had made his will, and the father replied that he had made his will

long ago. It appears that the daughter knew that a will had been made, but did not know its terms. She then asked her father if he had a lawyer attend to it, and he replied, "No; I wrote it and fixed it like I wanted it." The daughter then stated to her father that he should have a lawyer attend to it. The father concurred in the suggestion, and later in the day directed Mr. Berry, the husband, to phone for a lawyer, naming to him the lawyer wanted. There is no pretense in the evidence that the daughter or her husband made any suggestion or declaration to the father, or attempted to influence the devise or the execution of the will. The lawyer came and drew up the will, according to the undisputed evidence, as the father suggested and directed. After the will was written, the lawyer carefully read it over to him, and the testator approved it. The lawyer and the testator were the only persons present. The witnesses selected by the testator were sent for and came and signed the will as witnesses. The lawyer testified that the testator requested him to keep the will, and not to state to any one its terms. The lawyer did as requested. It was further testified by the attorney that the witnesses, at the testator's request, were not informed at the time of the terms of devise. The beneficiaries themselves did not know of the terms of the will until after the death of the testator. The testator died about 10 months after the execution of the will. It conclusively appears that at the time of the execution of the will the testator's mental faculties were clear and unaffected and normal. The will that the father referred to as having been written by himself was offered in evidence, and it devised the property as the will in suit did to the younger daughter. This will was dated January 11, 1906, more than two years before the will in suit was executed. It was proven that during the time the father was afflicted, and after the execution of the will, he was confined to the bed, and the younger daughter and her husband assisted in attending and nursing him. The older daughter testified that after her second marriage she frequently went to visit her father, and that he was kind and affectionate toward her and very devoted to her child, and that she was never denied admission to the house by her sister. The mass of testimony is not attempted to be set out, but the above are substantially the facts and conclusions therefrom. Even if the evidence shows an unkind feeling of the sisters toward each other covering a period of several years, the further undisputed circumstances establish that their conduct towards each other did not so influence the father as to overcome his mind

or result in producing the will. The circumstances showing that the father gave the older daughter a home at his house for six years after her divorce, even over the protest at first of her sister, and after her second marriage continued to receive her visits to him freely and with affection, and giving her money, as she admits, are strong circumstances of affection, and negative any dislike for her produced by her sister's animosity. And, as this strong affection existed prior to and at the time of and since the execution of the will, it would go to show that the mind of the father was not influenced against the daughter at the time of the execution of the will. The testator's firm and obstinate and long continued feeling against the two husbands of the daughter is a circumstance authorizing the inference that he was of strong will power, and not easily overcome. Having full opportunity to revoke the will after it was made, and refraining from doing so, is a circumstance that indicates that it was not produced by undue influence. The fact that the testator's mental faculties were clear and unaffected and normal before and at the time of the execution of the will, and his directing the attorney to draw it at it was, and free from any suggestion or declaration of any one, and unsurrounded by any influence at the time, would, in the light of the previous and subsequent circumstances, authorize the inference that the testator acted according to his own judgment and discretion. The will in suit was practically the same as the will written more than two years before. The fact that the testator did not divulge the terms of the will is not of itself and alone sufficient to show undue influence (1 Underhill on Wills, § 131); neither is the mere fact that the testator gave all the property to one child (Id. § 135). Acts of attention and services in sickness are not of themselves sufficient to make a case of undue influence. Id. § 143. The evidence wholly fails to show that the beneficiaries did any act to procure the will in their favor. Opportunity to exert influence is all that the evidence even tends to show, and that is not sufficient proof to set aside a will. Trezevant v. Rains, 85 Tex. 329, 23 S. W. 890.

There being no proof of the execution of the will by undue influence, and this being the only question in the case, the power of this court to enter the judgment that should have been entered exists. The judgment is reversed and here rendered for appellants, denying the application of appellees to have the order of the probate court probating the will in suit set aside. The costs of appeal and the trial court will be taxed against Appellee W. A. Brown.