## MAUL v. WILLIAMS et al.
### No. 1748—6214.

Commission of Appeals of Texas, Section A.
March 14, 1934.

Henry E. Vernor and Marcus W. Davis, both of San Antonio, for plaintiff in error.

A. L. Matlock, Ben H. Kelly, and J. R. Cade, all of San Antonio, for defendants in error.

CRITZ, Judge.

This is an appeal from a final judgment of the district court of Bexar county, Tex., denying application to probate a certain instrument in writing purporting to be the last will and testament of Margaret Voigt, deceased. The case was tried in the district court with C. F. Maul, plaintiff in error here, as proponent of the alleged will, and Margaret E. Williams et al., defendants in error here, as contestants. Maul appealed from the judgment of the district court to the Court of Civil Appeals at San Antonio. When the case was finally heard in that court, it dismissed the cause, holding that it had no jurisdiction. 46 S.W.(2d) 467. Maul brings error.

As we understand its opinion, the Court of Civil Appeals held that it had no jurisdiction because the record does not affirmatively show that the district court had jurisdiction.

The record shows that this case was finally tried in the district court on April 13, 1931. In this connection we here quote the following clause contained in the district court judgment: "It is further ordered, adjudged and decreed that this judgment be recorded in the Minutes of this Court, and a certified copy thereof be transmitted to the Honorable County Court of Bexar County, Texas, from which it was appealed, for its guidance, observance and execution in the manner provided by law. To which said judgment of the Court, and the verdict of the jury the Proponent C. F. Maul in open court excepted, and gave notice of appeal to the Court of Civil Appeals of the Fourth Supreme Judicial District of Texas at San Antonio."

The statement of facts shows that, when the case was tried in the district court, the following instruments were offered in evidence:

(a) Application to probate the above-mentioned instruments as the last will and testament of Margaret Voigt, deceased. This application shows to have been originally filed in the county court of Bexar county, Tex., on December 28, 1926. This application also contained in the transcript and shows to have been filed in the district court on August 25, 1927.

(b) The notice of the above application duly issued by the county clerk of Bexar county, Tex., on January 3, 1927. This notice shows to have been duly served by the sheriff of Bexar county, both by posting and by publication.

Finally the statement of facts contains the following agreement: "It is agreed between Counsel that the Decree of the Court entered

after hearing had thereon in the County Court is on Record and here referred to and considered in evidence on question of Jurisdiction. This record shows that the Probate Court denied the probate of the alleged will of Margaret Voigt, deceased, and that proponent gave notice of appeal to the District Court and filed and had approved his bond for appeal."

The contestants answered in the district court, and raised no issue of jurisdiction.

We think the above record shows jurisdiction in the district court.

The Court of Civil Appeals holds in effect that jurisdiction cannot be conferred by agreement. We agree that, where a court is lacking in potential jurisdiction over the subject-matter of the suit, no action or agreement of the parties can operate to confer jurisdiction. On the other hand, where a court has potential jurisdiction over the subject-matter of the suit, its right or power to exercise it may be shown by an agreed statement entered into by the parties. In this connection we hold that the Court of Civil Appeals erred in not giving effect to the above-quoted agreement. This ruling makes it necessary for us to pass on the other law questions presented by this appeal.

It appears from this record that Margaret Voigt, a resident of Bexar county, Tex., died on December 22, 1926. On December 28, 1926, C. F. Maul, plaintiff in error here, made application to the county court of Bexar county, Tex., to probate certain instruments alleged by him to be the last will and testament of Margaret Voigt, deceased. The application for probate as filed in the county court contains the following allegation:

"That the instruments herewith filed are wholly in the hand-writing of decedent and comprise the following, all of which together form the testamentary disposition of her estate, as therein stated:

"1. Instrument dated December 19, 1926;

"2. Instrument dated December 20, 1926;

"3. Instrument bearing no date but made on or about said date;

"4. Instrument in the form of a blank check, signed by decedent, made on or about December 7, 1926, being a check on the Frost National Bank, payable to petitioner, the amount thereof being blank."

The four instruments mentioned in the application were duly filed with it in the county court. When the case was tried in the district court, such trial was had on the orig-inal application for probate as filed in the county court. When the case was tried in the district court, the statement of facts shows the following proceeding:

"Proponent introduced in evidence: 'the papers that have been identified here and referred to by the witnesses—Especially these three papers at this time': (First):

"(1)

"'San Antonio Dec. 19

"'In case I do not come back from the hospital these are my requests—I wish Mrs. Folk to have the dressing table and chair in her room—Mrs. Murray is to have a dresser and dressing table and some chairs & buffet if she wants it—Mrs. Gillespie is to also divide bed clothes in 409—have what furniture she needs, Mr. Maul is to have the furniture in 407 also the marble top table & and any other things of Dad's in 409—I desire C. F. Maul & Mrs. Murray to go thru my things together—Mrs. Murray is to have her ring back she gave me Mr. Maul is to have the 2 stone ring & and the solitaire in the bank. Ethel is to have the three stone ring & pendent—I desire Mrs. Murray to destroy all worthless papers—letters etc. I desire all my clothes wraps etc to be given to Ethel Morris if she wants them—Mr. Maul is

"'2

to have the furniture &c—in 407—Ethel to have piano. Mr. Maul to have Brunswick—Mrs. Murray to have gold fish & Globes—I am making a check for Mr. Maul which will enable him to pay all my bills. I am making a check for Mrs. Williams which will pay her what I owe her—Mr. Maul is to have Flossie & take care of her until she dies—Mr. Maul is to have the entire balance in Frost Bank & pay all debts out of same—Also the collections that are to come from Milwaukee for Jan. & from lots & what Lucca pays in. Mrs. M. Voigt.'

"Paper dated separate date: (Second):

"'Dec. 20, 1926.

"'This is to certify to all people that Mr. C. F. Maul is hold and dispose of all my personal belongings, Furniture, etc. as directed by me. Mrs. M. Voigt.'

"(Third)—undated:

"'Mr. Maul will attend to all my business pay my debts & ct. Mrs. M. Voigt.'

"Proponent then introduced in evidence 'outside of these three papers: One dated Dec. 19 the other Dec. 20, 1926, and one bearing identification marks by Dr. Decker called "the yellow paper"): the following:

" 'San Antonio, Texas, Dec. ——, 1926.
" 'Frost National Bank of San Antonio.
30—9
"Pay to the order of O. F. Maul or bearer
$———— ———— Dollars
" 'Mrs. Margaret Voigt.'
"(On the back of this is):
" 'Dec. 7 oo 1926.
" 'I desire Mrs. Murray to go thru my things & destroy all papers &.letters of no value.                                  Mrs. M. Voigt.'

"Proponent introduced 'that check she referred to in the will; she stated she had already given checks—I don't offer the check as part of the "Wholly" writing comprising the Will; we offer these three papers as the Will and as having been wholly written by the deceased as a Holographic Will.' "

From the above it appears that by his application to probate the proponent alleged the above check was a part of Margaret Voigt's will. Also it appears that he filed same with his application for probate as a part of such will. In this connection the check is the instrument described as item 4, supra. When the case was tried in the district court, the check was offered in evidence with the statement that proponent did not offer it as a part of the will. We gather from the above that, when the application for probate was filed proponent had possession of this check as well as the other instruments, and then filed it as a part of the will, but when the case was tried in the district court he abandoned such contention, and contended that the check was not a part of the will.

It appears that, in response to a question submitting that issue, the jury found that it was the intention of the deceased that the above check should be a part of her last will and testament.

The original check above mentioned is sent up with the record. It is partly printed, partly written, and partly blank. We here reproduce such "check" showing the actual condition in which it was executed:

The statement we have made demonstrates that the above check was not wholly written by Mrs. Voigt. The jury found, as above shown, that she intended it as a part of her will. For the purposes of this opinion we will give effect to this finding without committing ourselves on the question as to whether the record justifies it.

Under the above record the contestants contend that the instrument of December 19, offered for probate, was not wholly written by the deceased and therefore cannot be probated. This contention is based on the proposition that the check is a part of it.

Our statute, article 8283, R. C. S. 1925, requires all wills, except as otherwise provided by law, to be in writing and signed by the testator or by some other person under his direction and in his presence. This statute also provides that, if the will is not wholly written by the testator, it must be attested by two or more witnesses. Article 8284 provides that, where the will is wholly written by the testator, the attestation of subscribing witnesses may be dispensed with. The instrument of December 19 is not attested by subscribing witnesses. It is in proof that it was wholly written by the deceased. In this connection, as already shown, the check is in part printed. Under the above record we hold that the instrument of December 19 is entitled to probate as a holographic will unless it should be rejected on account of undue influence, which question we will later discuss.

It is true that the statute will not permit an instrument to be probated as a holographic will unless "wholly written by the testator," but we think the instrument of December 19 meets this requirement within the meaning of the statute. In this connection we hold that a testamentary instrument intended by the testator as a holographic will should be given effect as such, although it contains words not in the handwriting of the testator, if such words are not necessary to

complete the instrument in holographic form, and do not affect its meaning. 40 Cyc. p. 1130, § c; 28 R. C. S. p. 162; Baker v. Brown, 83 Miss. 793, 36 So. 539, 1 Ann. Cas. 371, and note page 373; McMichael's Heirs v. Bankston, 24 La. Ann. 451; In re Noyes' Estate, 40 Mont. 190, 105 P. 1017, 26 L. R. A. 1145, 20 Ann. Cas. 366 and note.

In the McMichael Case, supra, the Supreme Court of Louisiana had before it the law question here under discussion. The opinion states the case and the court's conclusions of law. We quote the following from the opinion:

"The plaintiffs, who are heirs of G. P. McMichael, deceased, sue to annul the olographic will of their father on the ground that it was not wholly written by him.

"The four plaintiffs as witnesses state that the will was entirely written, dated and signed by the hand of the testator, except the word 'to' in the sixth line from the top, and the word 'acres' in the eighth line, which are in a different hand. Another witness and two experts express the same opinion. The original will is before us, and it is evident that there is some difference in the appearance of those two words from the balance of the writing. But it is very manifest that the presence or absence of the two words can have no material effect upon the meaning or contents of the will. Without them the sense is the same as with them—the whole will showing that the testator bequeathed to his wife a certain number of acres of land. In another place there is a connected and rational repetition of this bequest in which the same two words are written by the testator.

"Admitting, therefore, that the two words in question were added by the hand of another, we may safely, under the first clause of article 1589 R. C. C., consider them as not written, and not impair the validity or effect of the will.

"We can not say that the law requires a will to be annulled for so unimportant and trivial cause."

In the Baker Case, supra, the Supreme Court of Mississippi had before it the same law question here involved. In that opinion the court reviewed the authorities at great length, among them the McMichael Case, supra, and fully approved the rule we have announced. In the note under the Noyes Case, supra, 20 Ann. Cas. p. 370, the rule is thus announced: "The rule appears to be supported by a number of authorities that a testamentary instrument is valid as a holographic

will, although it contains words not in the handwriting of the testator, if such words are not necessary to complete the instrument in the holographic form, and do not affect its meaning. Thus it has been held that the fact that the names of witnesses were appended to an instrument in their own handwriting did not invalidate it as a holographic will, where such a will was not required to be witnessed. Andrews' Heirs v. Andrews' Executors, 12 Mart. [O. S.] (La.) 713; Roth's Succession, 31 La. Ann. 315."

The Noyes Case, supra, is cited by the contestants as supporting their contention that this will cannot be probated because not wholly written by the testator. We think a careful reading of that case will demonstrate that it supports our conclusion. It is true that the will involved in the Noyes Case was refused probate. This, however, was because of the peculiar wording of the Montana statute involved. The opinion shows that the statute (Rev. Codes Mont. 1907, § 4727) provided "A holographic will is one that is entirely written, dated, and signed by the hand of the testator himself." The will was not wholly dated by the hand of the testator. The court gave effect to the statute for that reason and refused the will probate.

When we come to examine the instrument involved in the case at bar, we find that while it, in one place, states, "I am making check to Mr. Maul which will enable him to pay all of my debts," it, in another place states, "Mr. Maul is to have the entire balance in Frost Bank & pay all debts out of the same." It is manifest that the presence or absence of the above check can have no material effect upon the meaning or contents of the instrument in which it is mentioned. Without the check the sense of the instrument is absolutely the same as with it.

The record shows that the jury found the instruments here offered for probate are the product of undue influence exercised by C. F. Maul over the deceased. Maul contends that there is no evidence in the record sustaining such finding. Such contention presents a law question. In view of the fact that this case must be remanded to the Court of Civil Appeals to pass on the sufficiency of the evidence on this question, we will not enter into any detailed discussion thereof. It is sufficient to say that we hold that there is some evidence in the record sustaining the jury's finding on this issue.

As already shown, Maul contends that the evidence is not sufficient to sustain the jury's finding of undue influence. This contention

addresses itself to the exclusive jurisdiction of the Court of Civil Appeals. That court did not pass on the question because, having dismissed the cause on another question, it did not reach it. Under such a record the case must be remanded to the Court of Civil Appeals to pass on the issue as to whether or not the evidence is sufficient to sustain the finding of undue influence.

We recommend that the judgment of the Court of Civil Appeals be reversed and the cause remanded to that court for further proceedings in accordance with this opinion.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and the cause remanded to the Court of Civil Appeals for further proceedings, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.