## MAUL v. WILLIAMS et al.

### No. 8713.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 11, 1935.

Rehearing Denied Jan. 8, 1936.

Marcus W. Davis, of San Antonio, for appellant.

John C. Hoyo, Barnes & Barnes, W. C. Douglas, and J. R. Cade, all of San Antonio, for appellees.

MURRAY, Justice.

This is an appeal from a judgment of the Forty-Fifth district court of Bexar county, denying the probate of an alleged holographic will of Mrs. Margaret E. Voigt, deceased. C. F. Maul was the proponent of the alleged will, which was contested by Mrs. Margaret E. Williams and Mrs. Gladys D. Rice, mother and half-sister, respectively, of the deceased Mrs. Voigt.

The alleged holographic will was composed of four different instruments: One dated December 19, 1926, another December 20, 1926, another not dated, and another dated December 7, 1926.

This cause has been before this court heretofore upon this same appeal, and in an opinion delivered by the late lamented Chief Justice Fly, found in 46 S.W. (2d) 467, styled In re Voigt's Estate. it was held that this court had no jurisdiction and, therefore, the cause was dismissed. A writ of error was granted by the Supreme Court, and in an opinion by Judge Critz, found in 69 S.W. (2d) 1107, styled Maul v. Williams, it was held that this court did have jurisdiction of this appeal and erred in dismissing the cause. All propositions raised in the appeal were then discussed and decided by the Commission of Appeals, with one exception, that is, the question of the sufficiency of the evidence to sustain the jury's finding of undue influence; this being a question exclusively within the jurisdiction of the Court of Civil Appeals. Accordingly, the cause has been remanded to this court for a decision upon this one question.

The Commission of Appeals, in its opinion, set out rather fully the nature of this cause of action, including the four instruments alleged to constitute the holographic will of Mrs. Voigt, deceased. We will, therefore, not restate these matters, but simply refer to that opinion for the same.

The facts established by the evidence are as follows:

Mrs. Voigt at the time of her death, which occurred on December 22, 1926, was a widow about fifty-five years of age. Her parents were Dr. Williams and Mrs. Margaret E. Williams. Dr. Williams and Mrs. Williams had evidently separated when Mrs. Voigt was a young girl, and she had been reared and cared for by Dr. Williams. Thereafter Mrs. Williams married a man by the name of Will Hockley, and to this marriage was born one child, who is now Mrs. Gladys Rice. Dr. Williams preceded Mrs. Voigt in death. Mrs. Voigt left as her sole surviving heirs at law Mrs. Margaret E. Williams and Mrs. Gladys Rice. The record shows that there was somewhat of an estrangement between Mrs. Voigt and her lawful heirs. Neither her mother or half-sister visited her during her last sickness, nor did they attend her funeral. Mrs. Williams explained this by stating that she was too old and decrepit to do so, which was no doubt true; she being over eighty years of age at the time.

Mrs. Voigt, at the time of her death and for several years prior thereto, had been conducting a rooming house business at 407 Avenue E. in the city of San Antonio. All of the beneficiaries of her alleged holographic will were patrons of her rooming house or hotel. Mr. Maul, proponent of the holographic will, and one of the beneficiaries therein, was a very close friend of Mrs. Voigt. He occupied the room next to Mrs. Voigt's, with a door opening between the rooms. Mr. Maul waited upon Mrs. Voigt when she was sick and advised her in business matters. He told her attorney, P. E. Johnson, that he had listened in on all conversations between him and Mrs. Voigt by means of an extension line.

The instrument which really made the disposition of her property was dated December 19, 1926, which was the day before she went to the hospital and three days before her death. It was wholly in her handwriting and written in ink. She told Mrs. Click, just before leaving for the hospital, that she had made her will and wanted it carried out as written. She said that Mr. Maul was her best friend and that she did not want her kinsfolk to have any of her property, as they had never done anything for her. She stated that her mother was well provided for, but she had left her a little. The purported will did state that she had left her mother a check which would pay her what she owed her. Mrs. Voigt was taken to the Santa Rosa Hospital on December 20, 1926, was operated upon, either for gall-bladder trouble or cancer of the stomach (the record is not clear as to which it was) on December 22, 1926, and died on the same day. While at the hospital she was

under the care of a nurse by the name of Mrs. F. H. Kent. As she was preparing Mrs. Voigt for the operation, and while Mr. Maul was present in the room, Mrs. Kent was asked, either by Mrs. Voigt or Mr. Maul, to leave the room. At this time Mr. Maul had a piece of paper and a pencil in his hand, and when Mrs. Kent returned he had a piece of paper in his hand and said in an excited manner to her: "You are a witness to the fact that Mrs. Voigt signed this paper!" which Mrs. Kent denied. After the operation Mr. Maul knocked at the door of Mrs. Voigt's room and caused her to say: "Oh, I am so sorry; I was so comfortable; please tell him to stay away." This Maul promised to do and asked Mrs. Kent not to let Mrs. Voigt know that it was he who had knocked, as he did not want Mrs. Voigt to be mad at him. He never thereafter returned to her room.

Mr. P. E. Johnson, Mrs. Voigt's attorney, was in possession of an unsigned will which he had prepared at the request of Mrs. Voigt some six months prior to her death, leaving all of her property to Ethel Morris Perkins, who is no doubt the same person referred to in the holographic will as Ethel and Ethel Morris. Johnson contended that the original copy of this unsigned will had been duly executed by Mrs. Voigt, and offered it for probate in the county court, which was denied him. He· seems to have abandoned his application to probate this will in the district court.

When Johnson informed Maul that he was in possession of the unsigned will and intended to offer it for probate, Maul asked him not to do so, and further stated that he would take care of Johnson if permitted to probate the holographic will.

There was evidence offered to the effect that Mrs. Voigt was of unsound mind, but upon this issue the jury found her to be of sound mind.

The question of undue influence was submitted to the jury by means of the following special issue: "Question No. 9. Did the proponent, C. F. Maul, exercise undue influence over the mind of Margaret Voigt, deceased, in the matter of the execution of the instruments described above and also described in the said application to probate?"

The jury answered the question in the affirmative, thereby finding that C. F. Maul, the proponent of the will and one of the beneficiaries under the will, had exercised undue influence over the mind of Margaret Voigt, deceased, in the matter of the execution of the holographic will. The question that we are here called upon to decide is whether or not the facts above set out are sufficient to support the jury's answer to this issue. In discussing this question we wish to first point out what the above facts do not show.

They do not show any of the facts and surrounding circumstances attending the actual execution of the will. They do not affirmatively show that any one exercised any influence whatever upon the mind of Mrs. Voigt to induce her to execute the alleged will. The only possible evidence of undue influence at the time of the execution of the will must be drawn from circumstances and facts which occurred prior and subsequent to the. actual execution of the alleged will.

It will be borne in mind that the burden of proof was upon the contestants to prove by a preponderance of the evidence that the purported will was the result of undue influence exercised by C. F. Maul, and that this undue influence cannot be inferred alone from motive or opportunity, but that there must be some testimony, either direct or circumstantial, to show that undue influence not only existed, but that it was in fact exercised with respect to the making of the will itself. 28 R.C.L. p. 144, § 28.

The undue influence which invalidates a will is that which destroys the free agency of the testatrix and places her in a position where she is dominated by another, and such undue influence must act directly on her mind at the very time when she executes the will.

Bearing in mind the above rules, we cannot permit the finding of the jury as to the exercise of undue influence to stand in this case, unless the facts above set out. are sufficient to cause reasonable minds to believe that Mrs. Voigt in making her will did not follow the bent of her own mind, but, on the contrary, her will was overcome by that of C. F. Maul and his will substituted in place of hers, and that she was thereby caused to do that which she did not intend to do and but for such undue influence she would not have done.

Appellees contend that the purported will is an unnatural will, in that it devises testatrix' property to those who are un-

related to her by blood or marriage and disinherits her mother and her half-sister, and that this fact is sufficient to create a presumption of undue influence.

The evidence is sufficient to show, as above set forth, that there was an estrangement between Mrs. Voigt and her mother and half-sister, such as would cause her not to desire to remember them in her will; while, on the other hand, the undisputed evidence shows such a close relation and friendship existing between Mrs. Voigt and Maul as would make a bequest to him a very natural thing for her to do.

It further appears that the other parties to whom Mrs. Voigt left her property were persons who resided in the house with her and who were her close friends and associates. The undisputed evidence further shows that Mrs. Voigt declared that she did not want her relatives to have any of her property and, on the contrary, expressed her appreciation and friendship for C. F. Maul. There is no evidence in the record that Mrs. Voigt ever had any affection or friendship for, or association with her half-sister, Mrs. Rice, and the only evidence that she had any desire to remember her mother in her will is that she told her nurse at the hospital, shortly before her death, that she had a very dear old mother. She also told Mrs. Mary B. Click that her mother was well provided for, but she left a little to her. The will did contain a provision: "I am making a check for Mrs. Williams, which will pay her what I owe her." We conclude that under all of these circumstances the evidence does not show that the proposed will was an unnatural will. It therefore follows that there can be no presumption of undue influence arising from the alleged unnaturalness of the will.

The date of the holographic will, or at least the instrument which devises her property, together with the undisputed evidence that Mrs. Voigt had executed her will before leaving for the hospital, renders what happened at the hospital as no evidence whatever of undue influence exercised at the time of the execution of the alleged will.

As a matter of fact, all of the testimony having any bearing upon undue influence is so weak and indefinite that it is a difficult matter to point out just wherein it is insufficient. We conclude that when all the testimony bearing upon undue influence is considered in the most favorable light to the contestants, it is insufficient to support the finding of the jury that the will was the result of undue influence. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138, 1144; Morris v. Bailey (Tex.Civ.App.) 16 S.W. (2d) 311, 312; Russell v. Boyles (Tex.Civ.App.) 29 S.W. (2d) 891, 892.

Accordingly, the judgment of the trial court will be reversed and this cause remanded for a new trial.