## BRIDGES et al. v. HOWELL.
### No. 3770.

Court of Civil Appeals of Texas. El Paso.
Dec. 8, 1938.

666

C. W. Croom, of El Paso (John A. Croom, of El Paso, on the brief), for appellants.

J. F. Hulse and Burges, Burges & Scott, all of El Paso, for appellee.

NEALON, Chief Justice.

This is an appeal from a judgment of the District Court admitting to probate the holographic will of Mrs. M. L. Nations, deceased. The will was executed June 3, 1936 and was witnessed by Mr. and Mrs. Ed Clark. It left the entire estate of decedent to her daughter, Bessie E. Howell, and appointed Bessie E. Howell independent executrix without bond. By codicil executed in her own handwriting on the same day testatrix left to each of her four remaining children, who are appellants here, one dollar. Mrs. Laura Bridges, one of testatrix's daughters, filed a contest of the will alleging that at the time and place of its execution testatrix was not mentally capable of executing the will or disposing of her property, and that she was then and there unduly influenced to sign and execute the same by Bessie E. Howell. On the 26th of May, 1937, after hearing, the will was admitted to probate. Mrs. Bridges, joined by her sisters, Mrs. Minnie Haley and Mrs. May Adams, and her brother, D. C. Nations, applied for a writ of certiorari, which was issued, and the case was heard in the District Court. A jury was impaneled and two special issues were submitted. The first inquired as to whether Mrs. Nations was, on June 3, 1936, possessed of testamentary capacity. The second submitted the question of whether Mrs. Nations executed the will through undue influence exercised upon her by Mrs. Bessie E. Howell. Both were answered in the affirmative. Mrs. Howell filed a motion to enter judgment in her favor non obstante veredicto. The motion was granted and judgment entered accordingly. From this judgment all of contestants appeal.

Opinion.

No question is raised as to the sufficiency of the evidence to support the jury's answer to the first interrogatory submitted, nor to the manner and form of its submission. The sole question submitted for our determination is whether or not there was sufficient evidence to support the jury's finding that the will in question was executed as a result of undue influence exerted by Mrs. Bessie E. Howell.

Tersely stated, the evidence relied upon to support this finding is as follows: At the time testatrix executed the will she was more than eighty years of age; some witnesses testified that she was childish, while others said she was not; she was not strong in health, though it is not denied that she could walk about with the aid of a cane; she was rather deaf; her eyesight was impaired, so that at times she used a magnifying glass in reading; at the time the will was executed she was living with Mrs. Howell; for a long time prior to moving to Mrs. Howell's house she had lived with Mrs. Haley, contestant, making occasional visits to her other children; she

moved to Mrs. Howell's house a month or two before the will was executed; Mrs. Howell obtained from Mr. W. W. Turney, a prominent and reputable attorney of the City of El Paso, a form of will; when the will was prepared Mrs. Howell told the two witnesses that her mother was ready to execute it; Mrs. Howell was in the room when testatrix signed the will and within a week thereafter collected $2000 in cash which was owing to testatrix by Mrs. Adams, appellant, and deposited the same in a joint account of testatrix and herself; a pension amounting to $22.50 drawn by her mother was placed in a savings account as a reserve against sickness and funeral expenses, the amount of the reserve being $200; at one time prior to the making of the contested will Mrs. Nations made a will leaving her property to her five children. This last evidence was elicited from Mrs. Howell, who accompanied it with the further statement that her mother said that that was not the way she wanted her will, and that she wished Mr. Turney to come down and fix up another will, but that Mr. Turney was not well and when Mrs. Howell went to him the second time he said, "I will fix a will for your mother and let her copy it, and you tell her I am not able to come"; that testatrix sent for Mr. Turney because years ago he had transacted business for her husband, and her husband had instructed her whenever she needed legal advice to "always call Mr. Turney." Further testimony relied upon by contestants was to the effect that at one time Mrs. Adams asked for a power of attorney and when Mrs. Haley took it to Mrs. Nations and Mrs. Nations sat down to write it and accept Mrs. Adams as her attorney in fact, Mrs. Howell said, "No, mama, that is not what you want to do"; that the son was a favorite of the mother's; that the other children knew nothing of the making of the contested will until the death of their mother; that Mrs. Howell did not tell Mrs. Bridges when she collected the $2000; that the other daughters had treated their mother well; that Mrs. Nations had told one of the witnesses in May that "she did not know a thing in the world about business and Mr. Nations had always attended to all of the business."

There was no evidence that Mrs. Howell requested her mother to sign the executed will. While testatrix's death did not take place until the December following the execution of the will, there is no evidence that at any time she ever expressed an intention during that interval that her property should, after her death, be distributed in any particular way, nor is there evidence that she was prevented from freely communicating with her resident daughters or her non-resident son. Mr. Clark, who in company with his wife witnessed the will, said that it was signed by testatrix in the presence of the witnesses, and the testatrix had on the day before requested him and his wife to witness her will; that he had heard Mrs. Nations tell Mrs. Clark that she was going "to make out a will" and wanted her estate to go to Mrs. Howell; that Mrs. Howell told him and his wife when her mother was ready to execute the will and was in the room when it was signed. He did not say that Mrs. Howell made any suggestions as to the will. Mrs. Clark's testimony was much to the same effect, varying only in immaterial details. She said the request to sign was made by Mrs. Nations who "brought it (meaning the will) out and she signed it and then we signed it"; that testatrix said she "wanted Miss Bessie to have it." Mrs. Clark, from her association with Mrs. Nations, believed that she made her own decisions and was not easily influenced by other people; Mrs. Howell and Mrs. Nations each appeared to have a strong affection for the other, and Mrs. Howell gave her mother "the best"; she waited on her, lifted her around when she needed it, did her cooking, and "waited on her in every way." She testified to no request or suggestion upon the part of Mrs. Howell at the time the will was executed.

Mrs. Howell, who was called to the witness stand by contestants, testified that everything she did with respect to her mother's affairs was done at her mother's request; that her mother must have been eight or ten days writing the will because she wrote so slowly; that when her mother was with Mrs. Haley she paid board; that her mother was with her (Mrs. Howell) "most of the time when she lived in the Valley and was with her in Tucson," indicating that her mother did not like a nursemaid in Mrs. Haley's employ; that the $2000 had been borrowed by Mrs. Adams who still owed interest upon the loan; that there was not much money after the expenses were paid; that her mother wished her to have the money; that the others were well and had a good living, and that witness buried her father; that she did not charge her mother board; that her mother said she wished her to have the small amount of money she had for the

reason that the others had a good living and witness needed it, and neither witness nor her husband was strong. Several witnesses testified that Mrs. Nations had told them that she wished Mrs. Howell to have whatever estate she left.

■ In all of this we find no evidence, circumstantial or direct, that Mrs. Howell exerted at the time of the making of the will any undue influence over her mother. In fact it is not shown that she exerted any influence, due or undue, unless it may be inferred from the attention she was giving her mother that there would be brought into play that due influence which results from appreciation of affectionate service rendered. The estate seems to have been a small one. Just how large it was does not appear, but apparently all that was left was such balance as might be on hand in the $200 savings account and the $2000 checking account, all of which, of course, would be subject to the expenses of last illness and burial. When the apparent size of the estate is taken into account and it is considered that the balance on hand when divided into five parts would not allow a large amount to any beneficiary, we think it may be said safely that the bequest of the entire estate to the daughter who cared for testatrix during her last months was not an unnatural act. It might very well have resulted from a desire to compensate for services rendered and to make lighter the burden of the child who possessed least of the world's goods. In any event, there is no evidence that would justify disregard of the expressed wishes of the testatrix under the principles declared by our courts. All of the evidence relating to the execution of the will indicated that at that time Mrs. Nations knew what she was doing; that the will reflected her wishes, and that her will was uncontrolled by Mrs. Howell. The rule in this character of proceeding was stated by our Supreme Court in Trezevant v. Rains et al., 19 S.W. 567, in this language [page 570]: "It is well settled that, in order to avoid a will on the ground of undue influence, it must appear that the testator's free agency was destroyed, and that his will was overcome by excessive importunity, imposition, or fraud, so that the will does not, in fact, express his wishes as to the disposition of his property, but those of the persons exercising the influence."

■ The burden of proof in a case of this character rests upon the party asserting that the will is the result of undue influence. Patterson v. Lamb, 21 Tex.Civ. App. 512, 52 S.W. 98. The opinion in the case last cited, which was written by the late Justice Neill, contains a clear statement of the rule, distinguishes between proper and improper influence, and holds that it is not enough that the testator is persuaded by solicitation or argument from disposing of his property as he previously intended, but that he may yield to the persuasion of affection or attachment and allow that sway to be exercised over his mind, and in neither of these cases would the law regard the influence as undue; but that to amount to undue influence it must be equivalent to moral coercion; "it must constrain its subject to do what is against his will, but which from fear, the desire of peace, or some other feeling, he was unable to resist; and, when this is so, the act which is the result of that influence is vitiated. Gilbert v. Gilbert, 22 Ala. 529 [58 Am.Dec. 268]. In the absence of fraud, no matter what influence may be exercised on a testator, so long as it does not overpower his inclination and judgment, and induce a disposition of his property contrary to his own wishes and desires, his will cannot be invalidated for undue influence. Monroe v. Barclay, 17 Ohio St. 302 [93 Am.Dec. 620]. The right of a testator to dispose of his estate depends neither on the justice of his prejudices nor soundness of his memory." [page 99.] To the same effect is Kophal v. Jantz, Tex.Civ.App., 297 S.W. 336, which, with approval, quotes the following from Salinas v. Garcia, Tex.Civ. App., 135 S.W. 588: "'Not every influence brought to bear upon the mind of a testator by a beneficiary will be classed as undue influence. Persuasion, entreaty, cajolery, importunity, argument, intercession, and solicitation are permissible, and cannot be held to be undue influence unless they subverted and overthrew the will of the testator and caused him to do a thing that he did not desire to do.' Holmes v. Houston (Tex.Civ.App.) 241 S.W. 1039; Skeeters et al. v. Hodges et al. (Tex.Civ.App.) 270 S. W. 907; Shelton v. Shelton (Tex.Civ.App.) 281 S.W. 331, and cases cited; 18 C.J. p. 236." [page 339.]

In Jones v. Selman, Tex.Civ.App., 109 S. W.2d 1003, will be found an indication of what is necessary to be shown in order to support a finding of undue influence.

The testimony in this case does not meet the test required by law, and the trial judge

did not err in entering judgment non obstante veredicto.

The judgment is affirmed.

HIGGINS J., was absent and did not participate in the decision of this case.