### PRICE v. TALIAFERRO et al.
### No. 15391.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 5, 1952.

Rehearing Denied Dec. 26, 1952.

H. H. Wellborn, of Henderson, and Waldrop & Shaw, of Henderson, for appellant.

Gordon R. Welborn, Rex Houston and Bath & Turner, all of Henderson, for appellee.

HALL, Chief Justice.

The County Court of Rusk County entered judgment on the 11th day of April 1951, admitting the following written instrument to probate as the last will and testament of Sue E. Price, deceased, who died on or about the 30th day of December, 1950, in said County, to-wit:

"I Sue E. Price do here by make this my last will and testament I here by revoking all former wills by me made. I bequeath all my property real personal where so ever the same may be, to my be loved brother J. M. Price, with the exception of Fifteen Dollars, ($15.00)

"To be paid to my Sister Mrs. Annie Lou Price Taliaferro. I here by request that my said brother J. M. Price be the executor of this my last will and testament. It is my desire that my beloved brother J. M. Price shall not be required to make bond or give security for the faithful execution of the duties of executor.

"Witness my hand this the day 18th of Sep. 1934.

"Sue E. Price

"We the under sign witnesses saw Sue E. Price sign her name It was read by us in her presents This her last will and testament.

"Witness

"W. H. McCord

"Mrs. W. H. McCord

"Mrs. W. B. Moseley

"Benjie B. McCord 8 May 1948"

A district court of Rusk County entered its judgment on the 30th day of January, 1952, annulling said judgment of the probate court based upon jury answers to the two special issues submitted during the trial of a contest of said will brought by appellee, Mrs. Annie Lou Taliaferro sister of the testatrix, joined pro forma by her husband, Z. K. Taliaferro. The two issues and answers are:

"Special Issue No. 1. Do you find from a preponderance of the evidence that Sue E. Price signed the instrument dated September 18, 1934, introduced in evidence in this case, in the presence of W. H. McCord, Mrs. W. H. McCord and Mrs. W. B. Moseley, or any two of them? * * * Answer: She did not.

"Special Issue No. 2. Do you find from a preponderance of the evidence that the making and execution of the instrument dated September 18, 1934, introduced in evidence herein as the last will and testament of Sue E. Price, was secured by undue influence on the part of J. M. Price and Mrs. W. B. Mosely, or either of them? * * * Answer: Yes."

Proponent of the will, appellant J. M. Price, brother of testatrix and appellee, presents his appeal to this court in the form of thirty-four points. Several of his points refer to error of the court in rendering judgment based upon the jury finding to special issue No. 1, supra, over his objection, to the effect the evidence is insufficient to support same.

It is undisputed by appellees' witnesses that the will of Sue E. Price, deceased, was written in her own handwriting, except the date and the witnesses' signatures. Since neither is a requisite to a valid will, as set out in provisions of Article 8283, Vernon's Tex.Civ.St., we concur in appellant's views and hold that the will was susceptible to probate as being the holographic will of Sue E. Price. See 44 Tex.Jur., p. 658, sec. 115; also Maul v. Williams, Tex. Com.App., 69 S.W.2d 1107; Id., 124 Tex. 408, 78 S.W.2d 164; Id.; Tex.Civ.App., 88 S.W.2d 1087.

Appellant's points fourteen and fifteen refer to error of the trial court in submitting to the jury special issue No. 2, supra, inquiring whether or not the making and execution of the instrument introduced as the last will of Sue E. Price was secured by undue influence on the part of appellant and a Mrs. W. B. Moseley, or either of them, over his objection that there was insufficient evidence to support the submission of such issue and/or there is no evidence to support the jury finding to such issue.

It is impossible to lay down any hard or fast rule which would govern accurately the question as to whether a given record contains affirmative evidence of undue influence. It has been held that every case is different from every other case and must depend largely on its own facts, circumstances and conditions. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034; Besteiro v. Besteiro, Tex.Com.App., 65 S.W.2d 759.

It has been determined that a will is one of the most important legal documents. The object of the law concerning wills is to enable owners of property reasonably to control its disposition at their decease and to cause the real intentions and wishes of such owners to be expressed and preserved in order that they may be ascertained and carried into effect. 57 Am. Jur., Wills, p. 38, sec. 1.

In determining whether there are sufficient facts to support the trial court's judgment, we will view same in its most favorable light.

It is noted that one witness to the will, Benjie B. McCord, dated her signature thereto as "8 May 1948." Since there is no contest as to when the will was executed, we will merely clarify this discrepancy in the different dates shown on the will. Mrs. W. H. McCord testified that her husband wrote in the will "18th Sept. 1934" at the time Sue E. Price signed same. Benjie B. McCord witnessed the will on the 8th of May, 1948, when testatrix Sue E. Price asked her to sign the will because she wanted three living witnesses to her will, (W. H. McCord, father of Benjie B. McCord, having died).

In order to better understand the case, we will give a synopsis of testimony pertaining to history of the family involved.

Testatrix Sue E. Price in this case, appellee Annie Lou Taliaferro and appellant J. M. Price were the surviving children of T. W. Price, who died in 1921, and M. A. Price, who died August 8, 1933. Mrs. M. A. Price, mother of the testatrix, appellee and appellant in this law suit, left two wills which were presented for probate and contested by either appellant or appellee, and both were set aside. One of the wills, dated March 5, 1932, left the entire estate of Mrs. M. A. Price, deceased, to Miss Sue E. Price, testatrix here, and to her sister, appellee here, Mrs. Annie Lou Taliaferro. The other will, dated December 1, 1932, left the entire estate of Mrs. M. A. Price, deceased, to Miss Sue E. Price, testatrix here, and appellant, J. M. Price, her brother. Appellant, appellee and testatrix here were parties to the respective suits, which were terminated in 1934, just a few days prior to the execution of the will before us. These two will cases were consolidated in the district court trial, wherein Sue E. Price, testatrix here, testified at length in July, 1934. Her testimony was introduced in the trial of this case covering 74 pages of the statement of facts.

Some of the facts to which she testified are, in substance, as follows: That after her father's death she took care of her mother and her mother's business, along with appellant; that she lived with her mother and J. M. Price lived close to them. That appellee visited them only three or four times a year prior to the discovery of oil on their land but after that she came every week or two. Appellee was constantly trying to secure deeds from her mother. That unbeknown to her, appellee employed an attorney, had the will dated March 5, 1932, prepared for her mother to sign; that neither she nor her mother knew the will was to be made; that her mother executed it thinking she was signing a deed or copy of a deed which she was, at that time, executing to appellee, covering a half acre of land. That she did not know what was in the will until the lawyer read it to her mother; her mother was hard of hearing and did not understand what was in the will. That after her mother executed the will she (Sue) protested to appellee, stating that it was not fair for her mother's will to provide that appellant would receive nothing from their mother's estate. That before and after the death of their mother, appellee agreed not to probate this particular will but she agreed they would divide the property equally between the three of them. Later, without telling her anything about the matter, appellee proceeded to have the will dated March 5, 1932, probated. Appellee came by Sue's house the same day it was probated but did not mention it to her, that she, Sue, did not know it was supposed to be probated. This made her very angry at appellee. She, the present testatrix, told appellant to file suit in trespass to try title against both her and appellee and if he did not do it she would have it done. She also testified she intended to break the will offered by appellee if it took all the money she had in the world and that she meant every word of it. She hated her sister, appellee here, because she had double-crossed her. Throughout her testimony upon cross examination the attorney undertook to have her testify contrary to her original views. Questions were propounded to her for the purpose of eliciting testimony unfavorable to her position, but without avail. All of her answers reflected

a sharp, keen and alert mind. She admitted she was working with her brother to break her mother's will executed at the instance of appellee. She further testified she wrote the second will for her mother to sign, the provisions of which gave the property to her and appellant. Pertaining to said will she was asked this question: "What does the word 'revoke' mean? A. To revoke all other wills, that is to do away with all other wills."

We give this background because we find her testimony, given on or about the time she executed the instrument in question here, not only shows clearly her feeling toward her sister and her brother, appellee and appellant herein, but also exemplifies her mental capacity at such time. Her testimony also clearly reflects her reasons for not leaving any of her property to her sister, except $15 devised in the will. We might add here that from such testimony it could be easily ascertained that the will in question, looking at it from her viewpoint, made a natural disposition of her property. It is neither unnatural nor unusual for her to will the major portion of her estate to her brother, with whom she was closely associated, and to some extent depended upon to assist her in her business. The testimony and the pictures of their two homes indicate that J. M. lived not over one hundred yards from Sue. The home which J. M. assisted her in building is a nice, big, roomy two story residence, with servants' quarters and garage. The grounds are shown to be well kept, within a nice metal enclosure.

From a careful reading of the testimony which she gave in open court during the same year she wrote her will and analyzing the questions, together with her answers, it would be difficult to find that undue influence prompted such answers.

As against this background we have the testimony of the contestant's witnesses, which was considered by the trial court as sufficient to support the jury finding that the testatrix wrote the will in question under undue influence on the part of appellant and a Mrs. W. B. Moseley, or either of them.

Witness John Klotz, a land surveyor, testified as to the location of certain tracts of land belonging to some of the parties.

Witness George J. Lacy testified at length as an expert in examining the questioned documents and handwriting, wherein he testified in substance that the entire instrument in question was in the handwriting of Sue E. Price, as follows: "Q * * * it is your opinion that this entire instrument with the exception of 18th September, 1934, and with the exception of the words, 'Witnesses' and the signatures of the witnesses, is in the handwriting of Sue E. Price, *. *. A Yes sir."

Witness Mrs. Zora Strickland testified by deposition that she had known testatrix since 1913, that her husband is a second cousin to appellant and appellee; that she lived about a mile from the Price family. That she worked with testatrix in the Methodist Church; that the Sunday School class to which they both belonged would have their monthly class meetings sometimes at testatrix' home; that testatrix did not take any part in the programs, that she seemed to be a timid person and did not have much initiative to take a lead or a part in things. That she would seem to depend on others more than doing things herself. That she seemed to do the things she wanted to do. That testatrix was Sunday School secretary for a long time, whose duties were to call the roll, count the money and report it to the superintendent. That in her opinion Sue's room was not neatly kept in that everything she seemed to want she would put in her room and leave it.

Witness Mrs. Flora Knight testified she knew all three of the Price children; that she went to school with testatrix and J. M. That Miss Sue was not very quick to learn, however, she was not dumb. She was timid and shy but since school days she had not seen Sue but about three or four times. That she asked her about her sister, appellee, once and she never said anything against her.

Witness Mrs. Ottie Taliaferro testified that she was related to the three Price children. She testified she was sixty-six years old and that Miss Sue was just a little

older. That she had visited in the Price home many times and went to school with Miss Sue. That Sue was kind of slow to learn in school. That she did not go with but very few boys, she did not take part in playing with other children but would stand around and watch. That after Sue's father died, Sue and her mother operated the store of her father. That Sue was secretary of their Sunday School class for about six years.

Witness Mrs. Nora Thornton, a practical nurse, testified that she knew Sue just a few days before she died, she was suffering so a person could not tell much about whether she was conscious or unconscious. She heard Miss Sue ask one of her nieces if she had let appellee know about her being sick and she said, "Yes, I have."

Witness Mrs. W. P. Barton testified she, as a school teacher, taught Sue E. Price and J. M. Price during the year 1901; that Sue was the oldest child in school, that she did very poor work; that Sue kept herself apart from the other children. That J. M. Price was a very apt student and did his work nicely but gave her quite a bit of trouble in discipline, that he was the oldest boy in school, that he was domineering and contentious with others. On cross examination she admitted that the father took the two Price children out of her school after she had given J. M. a thrashing.

Other witnesses, such as Mrs. Tommie Mason, Kermit Robertson, Dora Bell Taliaferro, and Eugene Lacy, testified to similar circumstances which were calculated to show light on the character of testatrix that would justify a finding of the jury that she could have been over-reached and over-persuaded to write the instrument in question at the hands of J. M. Price and one of the witnesses to the will, Mrs. W. B. Moseley, who was a friend of Sue E. Price.

Witness H. E. Anderson testified in substance that in 1936 he made a contract with J. M. Price to build a house for his sister Sue. That J. M. told him on one occasion that he wanted the house to be fire proof because he was afraid his sister would not be able to get out of a fire. The reason why he was contracting the job was because his sister was not capable of either contracting or passing upon the plans and specifications of the house. The witness admitted upon cross examination that he could not make an amicable settlement with J. M. Price for cost of the building and he sued both J. M. and Sue Price. That he recovered judgment against Sue Price but not for the amount he had sued for. Both Sue Price and J. M. Price met him in the courthouse and fought the case. That they admitted owing him for about an amount of the judgment which he recovered by his suit. It was also proved by appellee that testatrix had large sums of money in the bank against which she had been cashing checks personally.

■ We find there is no evidence of undue influence but according to the testimony we think the circumstantial evidence is against the theory of undue influence. Appellees argue that undue influence can usually be proved only by circumstantial evidence but the law requires such circumstantial evidence to be more than mere speculation. 32 C.J.S., Evidence, § 1044, page 1129. See Maul v. Williams, Tex.Civ. App., 88 S.W.2d 1087.

As stated in the Besteiro case, supra [65 S.W.2d 762]: "It is, however, certainly necessary for the attacking party to introduce some tangible and satisfactory proof, direct or circumstantial, that the grantor's free will has been overcome by the undue influence alleged, so that the deed does not in fact express his (grantor's) wishes, as to the disposition of his property, but the wishes of the person exercising the undue influence."

■■ Appellees assert that the close relationship which the testatrix had with appellant gave him an unusual opportunity to exert undue influence over her, which, coupled with what they view as an unnatural disposition of her property, is sufficient to support the verdict. There is no doubt but that the unusual opportunity to exert undue influence was present, but still there must be some evidence of a tangible nature that such influence was in fact exercised. The position of being in an unusual opportunity to exert undue influence by

being in a position to do nice things for the person for whom such influence is supposed to be exerted, is equally as consistent with the theory of innocence as it is with the theory of wrongdoing on the part of such person having the unusual opportunity. The disposition which testatrix made of her property under the circumstances is not so unnatural as of itself to give rise to an inference of undue influence.

■ It has been held that when the ground of fraud or undue influence is plead, as in this case, against the devisee who occupies a confidential or fiduciary relation to the maker of the instrument, the burden rests on the devisee to show the fairness of the transaction by appropriate evidence. But a presumption of fraud or undue influence does not usually apply where confidence is reposed by one in another. Such presumption of fraud properly applies to fiduciary relationships, such as guardian and ward, trustees, etc. As stated in 14 Tex.Jur., p. 863, sec. 91: "Obviously no superiority of one person over another can be presumed from the mere fact that the parties are brother and sister * * *." (Sec. 92) "* * * Neither does the fact that some of the grantor's children or grandchildren are excluded from his bounty in itself prove the exercise of such influence * * *." We think the same rule would apply as between brothers and sisters. Therefore, we find the burden was upon contestant to show undue influence was exercised. See 14 Tex.Jur., pp. 858–864.

In the Long case and the Besteiro case, importance is attached to the circumstances immediately surrounding execution of the instrument. Very little, if any, of appellees' testimony shows circumstances surrounding the execution of the instrument. Most of it is very remote and results in merely raising inference upon inference. For instance, one witness testified that she went to Sue Price for a loan to make a trip and she thought her action was peculiar because Miss Sue suggested that she would have to see her brother, J. M., before she made such loan. On the other hand, the undisputed evidence reflects when the Methodist preacher wished to borrow quite a sum of money to finance the church Miss Sue made the loan direct to the church.

■ In our unusually long discussion here we have undertaken to show that the evidence is insufficient to support the trial court's judgment that appellant, J. M. Price, and Mrs. W. B. Moseley, or either of them exercised such undue influence over testatrix as to cause his, her or their wishes to be substituted for those of testatrix, under the law of this state. See also Firestone v. Sims, Tex.Civ.App., 174 S.W.2d 279, writ ref.; Black v. Black, Tex.Civ.App., 240 S.W.2d 458, writ ref., n. r. e.; Bridges v. Howell, Tex.Civ.App., 122 S.W.2d 665; Berry v. Brown, Tex.Civ.App., 148 S.W. 1117, writ ref.; Dannenbauer v. Messerer's Estate, Tex.Civ.App., 62 S.W.2d 235, writ ref.

In view of our holding we do not discuss appellant's other points of error.

Judgment of the trial court is reversed and judgment is here rendered ordering probate of the will, such judgment to be certified to the County Court for observance, and denying any recovery to appellees.

On Motion for Rehearing.

Appellees, in their motion for rehearing, assert that inasmuch as there was no point of error raised by appellant on the ground of insufficiency of evidence this court erred in passing upon sufficiency of the evidence and in reversing the judgment of the trial court on that ground.

We note in our opinion that we found: "There is no evidence of undue influence * * *." In our last paragraph, however, we found: "The evidence is insufficient to support the trial court's judgment * * *."

To remove any confusion, the substance of our holding in the original opinion is that there is no evidence of probative force to support the judgment of the trial court.

Since our decision remains unchanged, appellees need not file second motion for rehearing.

Appellees' motion for rehearing is overruled.