**HILL et al. v. CROW.   (No. 2553.)**

(Court of Civil Appeals of Texas.   Texarkana.
May 11, 1922.   Rehearing Denied
May 18, 1922.)

1. Wills ⊜═55(5)—Evidence held insufficient
to prove want of testamentary capacity of
60 year old testatrix suffering from dropsy.

In action to set aside judgment probating
will executed by 60 year old testatrix who
was afflicted with dropsy and prior to execution
of will had at times fallen into a stupor, evi-
dence *held* insufficient to prove that she was
not possessed of testamentary capacity at the
particular time the will was executed.

2. Wills ⊜═166(1) — Evidence held not to
prove undue influence.

Evidence *held* insufficient to prove that
wife's will giving wearing apparel and person-
al property to daughters of very dear friend,
and giving husband life estate in land with
remainder to such daughters, was procured by
undue influence of such children.

Appeal from District Court, Cooke Coun-
ty;  C. R. Pearman, Judge.

Suit by Richard Crow against Bessie Belle
Hill and others to set aside probate of will.
Judgment for plaintiff, and defendants ap-
peal.   Reversed and remanded for new trial.

Tisha Crow, wife of appellee, Richard
Crow, died December 17, 1919, leaving a will
executed by her May 5, 1919, which was pro-
bated February 2, 1920, as appeared from a
judgment of the county court of Cooke coun-
ty of that date.   By her said will Tisha
Crow bequeathed all her "wearing apparel
and personal belongings, absolutely and un-
conditionally, to be shared equally by them,"
to her friends Bessie Belle Hill and Myrtle
D. Moore, who are the appellants here, and
also bequeathed to them the remainder of
her property, "both real and personal where-
ever situated, to be shared equally by them,"
but subject to the right of appellee "to have
the possession and use of said property dur-
ing his natural life."   The suit resulting in
the judgment from which this appeal was
prosecuted was commenced by appellee in
said county court September 22, 1920.   It
was to set aside the judgment probating
said will on the ground that Tisha Crow at
the time she made it (1) was mentally inca-
pable of making a will, and (2) was wrong-
fully influenced by appellants to make it.
On special issues submitted to them, the jury
found (1) that Tisha Crow did not "have suf-
ficient mental capacity to make the will,"
and (2) that she was induced to make it by
"undue influence exercised by appellants."
On those findings the court rendered judg-
ment declaring the will to be void, setting
aside the order of said county court probat-
ing it, and awarding the property belonging

to Tisha Crow when she died to appellee.
Thereupon appellants prosecuted this appeal.

Geo. T. Burgess, of Dallas, and Culp, Culp,
& Culp, of Gainesville, for appellants.
J. T. Adams, of Gainesville, for appellee.

WILLSON, C. J. (after stating the facts
as above).   [1, 2] Careful consideration of
the testimony has convinced us it did not
warrant either the finding that Tisha Crow
lacked testamentary capacity at the time she
executed the will, or the finding that she was
wrongfully influenced to execute it.   She and
appellee Richard Crow, her husband, were
negroes.   Tisha was about 60 years of age.
It was agreed at the trial that she had no
relative living other than her husband.   It
appeared without dispute in the testimony
that appellants were daughters of a deceased
friend for whom Tisha had great affection,
that she had known appellants all their lives,
that they "seemed like kinfolk to her," and
that she was kindly disposed toward them,
not only on their mother's account, but also
on their own account.   It is inferable from
the testimony that the only property owned
by Tisha at the time she made the will and
afterward was the "wearing apparel and per-
sonal belongings" she bequeathed to appel-
lants and a house and lot in Gainesville used
by her and appellee as a homestead.   It was
established without dispute in the testimony
that Tisha suffered from dropsy for a year
or longer before she executed the will in
question, and there was testimony that she
passed much of the time during several
months preceding and following the time
when she executed the will, until she died,
in a stupor from which she was aroused with
more or less difficulty, according to the im-
pression of the witness testifying, and that
her memory was so impaired she would
sometimes not remember things she had done
or said a short while after she did or said
them.

But it also appeared from the testimony,
and practically without dispute, that when
she was not in a stupor Tisha acted and talk-
ed intelligently; and all the testimony as
to her mental condition at the time she ex-
ecuted the will indicated that she was not
then without testamentary capacity.   The
witness Davis, who wrote the will, testified
that, in response to a request he received by
telephone, he went to Dr. Wilson's home in
Greenville, where he found Tisha, who told
him "she wanted to make a will and how
she wanted it made."

"She told me," the witness said, "she had a
husband, but she did not have any near rela-
tives.   She spoke kindly of her husband, did
not want to interfere with him; but at his
death she wanted everything to go to those
named in the will, those friends, and I ex-
plained to her that so far as the homestead
was concerned that he had a life estate as

long as he lived. She seemed satisfied and did not want to interfere with him as long as he lived, with the exception of the wearing apparel; of course, he had no use for that. So far as I could tell, she was all right, knew what she was doing. I never saw her before that. * * * I say her mental condition was all right, but I do not know about her physical condition. All I know was she was up, and the only impression made on my mind was the impression made at that time. The only property she mentioned was this house and lot in East Gainesville."

Dr. Wilson, a physician, was one of the subscribing witnesses to the will. He testified that so far as he could tell Tisha's mental condition was normal at the time she executed it.

"She seemed," he said, "to be in a natural condition, and she appeared to be able to know what she desired to do, I think. I spoke to her some, and her conversation was natural, rational, about it. I do not remember who requested me to sign the will as a witness. There was quite a little bunch there, and I do not remember who asked me to sign. My wife, I think, was present, and Mr. W. O. Davis and Tisha and Myrtle Moore and Bessie Hill. Bessie Hill was working for me and lived there at my place. * * * I think Bessie Hill asked my wife's permission to come in there and fix this up—asked permission to bring this old woman from the servant's house and fix up the will. I would not say whether or not Mrs. Wilson phoned for Mr. Davis, but I do not think she did. I do not know how long Mr. Davis was gone before he returned with the will—an hour, I would say, but I am just guessing at it, I think he came back the second time before dinner, but I am not sure about that."

Appellants, the only other persons (except Dr. Wilson's wife, who did not testify at the trial) present when the will was executed, both testified that Tisha's mind was sound. "Her conversation," Myrtle said, "was connected and intelligent."

The issue as to testamentary capacity having reference as it did to the time when Tisha executed the will, and not to any time before or after she executed it, and all the testimony with reference to her mental condition at that time indicating, as we have seen, that she possessed such capacity, the finding of the jury to the contrary was plainly unwarranted.

The testimony appellee relied upon to sustain his contention that appellants wrongfully influenced Tisha to execute the will showed only that they were with her when she executed it and for several hours, perhaps, before she executed it, and hence had an opportunity to influence her. The view appellee seems to take of the matter is that, an opportunity to do so being shown to exist, the jury had a right to infer from testimony that she was 60 years of age and afflicted with a disease which impaired her mind and body, that Tisha could be influenced by appellants to make a disposition she did not wish to make of her property, and a right to infer from the provisions of the will that she was wrongfully influenced by appellants to do so. It seems to us that such inferences would be unwarranted, because speculative. There is nothing whatever in the record which suggests, even faintly, that the disposition Tisha made of her property by the will in question was not the disposition she at the time and ever afterward wished to make of it. Appellee argues that the will was an unnatural one, but it was not, as we view it. On the contrary, we think it was a natural and reasonable one. Having no relatives, and having provided for the use by her husband of the property she owned during his life, it was not unnatural that Tisha should wish the property to go after his death to her friends, the daughters of the deceased friend whom, a witness testified, she regarded as a sister.

The judgment is reversed, and the cause is remanded for a new trial.