**KOGER v. COKER et al.**

**No. 1937.**

Court of Civil Appeals of Texas. Waco.

Nov. 18, 1937.

Rehearing Denied Dec. 23, 1937.

J. C. Lumpkins, of Waxahachie, for plaintiff in error.

Mark Smith, of Waxahachie, for defendants in error.

ALEXANDER, Justice.

This is an appeal from a judgment of the trial court denying the probate of the will of Mrs. Phoebe I. Koger. The jury found that the will was executed as the result of undue influence exercised over testatrix by her husband, the sole devisee under the will. The proponents contend that the evidence was insufficient to sustain this finding.

The will was executed in 1929, when the testatrix was sixty-nine years of age and her husband was about eighty years old. She died in 1935. She had been married twice. By her first husband she had three children, two of whom are the contestants herein, and by her second husband she had four children. She was married to her second husband, the beneficiary named in the will, about forty years prior to the execution of the will. There was evidence that at the time she married her second husband she owned about $5,000 worth of property as her share of the community property by her first marriage, but that practically all of the property owned by her at the time of her death consisted of her interest in the community property acquired during her last marriage. There was evidence that at the time the will was written in 1929, the testatrix and her husband went to the office of a local attorney and discussed with him the matter of making a joint will, in which each would will all his or her property to the other. Each of them expressed a desire to will his or her property to the other. Mrs. Koger apparently expresed herself freely about the disposition of her property. Upon the advice of the attorney, they concluded that it would be better for each of them to execute a separate will, devising his or her property to the other, and, in accordance with the agreement made at that time, said attorney prepared the wills the following day and sent them to Mr. and Mrs. Koger. Two or three months later, on an occasion

when a son of the last marriage and his wife were passing the house in an automobile, Mrs. Koger went out to the road and asked them into the house for the purpose of witnessing her will. The will was then executed in the presence of said son and his wife as witnesses and at a time when Mr. Koger, the beneficiary, was present.

The only proof offered by contestants was that testified to by the contestants themselves. Jack Coker testified that he was fifty-seven years of age and lived in Coleman county. He left his mother's home in Ellis county when he was about twenty-two years of age and had not lived there since then; that he usually visited his mother on the average of about twice a year; that on one occasion, when witness was about sixteen years of age (about thirty-five years prior to the execution of the will), he saw his stepfather, the beneficiary in the will, knock his mother down and drag her by the hair of her head; that his mother grew up in the country and married the first time when she was about sixteen years of age, but he had heard talk of her attending school in Colorado and that his mother was "a very intelligent woman and wrote a great deal"; that his stepfather managed the financial affairs at home and ran it as he saw fit; that if Mrs. Koger wanted to do something and Mr. Koger disagreed, he simply "did as he saw fit"; that she never bought anything without her husband's consent; that witness never heard of the will until about a month or so after his mother's death. The other contestant, Will Coker, testified that he was fifty-six years of age, resided at Phoenix, Ariz., and that he left his mother's home when he was eighteen; that he had not been around his mother much since he left home, but that he heard from her about once a year and that he usually came home about twice a year; that his stepfather ran the business at home and his mother had to consult his stepfather about everything; that she often asked for a new home and furniture but that she never got a thing unless he said so; that she was not allowed to give any checks on the bank account; that witness never heard of the will until after his mother's death.

Other witnesses introduced by proponents testified that testatrix had authority to give checks on the family bank account and, in support thereof, proponents introduced twenty-three canceled checks that

had been given by Mrs. Koger on the bank account in the year 1933, and thirty-eight similar checks that had been given by her and paid by the bank during the year 1934. Several disinterested witnesses, neighbors of the family, testified that a very congenial relation existed between testatrix and her husband. They described Mrs. Koger as "a very intellectual woman," "well read," and as having an "active and alert mind," a "very strong and a very forceful mind," and as being a woman with "a strong character." They testified that she retained her intellectual faculties up to the time of her death.

We have reached the conclusion that proponent's contention that the evidence is insufficient to support the jury's finding of undue influence must be sustained. Disregarding all adverse testimony and construing the evidence relied on by contestants in the light most favorable to them, such evidence shows at most that the testatrix willed all of her property, consisting principally of her interest in the community estate of herself and surviving husband, to her husband instead of distributing same among her children in accordance with the statute of descents; that the beneficiary influenced or dominated the testatrix in the management and control of the family affairs generally; and that said beneficiary lived with the testatrix and was present when the will was prepared and executed, and therefore had an opportunity to influence the testatrix. This, in our opinion, is insufficient to support the jury's finding of undue influence.

The right of a person to dispose of his property by will in such manner as he sees fit is a valuable one, and an attempt to exercise that right ought not to be lightly regarded nor interfered with without some substantial evidence showing that the purported will does not in fact represent the true will of the deceased. Jones v. Milam, Tex.Civ.App., 164 S.W. 859, par. 2; Stolle v. Kanetzky, Tex.Civ.App., 220 S.W. 557, par. 5; Stell v. Salters, Tex.Civ. App.; 83 S.W.2d 742; 44 Tex.Jur. 576. The mere fact that the husband, who was named as the sole beneficiary in the will, had the power of control or general influence over the acts of testatrix in the management of her affairs generally, and that he had an opportunity to influence her in the execution of the will is not sufficient to destroy the effects of the purported will. This evidence, when considered in connec-

tion with the fact that all of the property was willed to the husband instead of the children, may be sufficient to raise a suspicion of undue influence; but this is insufficient. There must be some substantial evidence, either direct or circumstantial, that undue influence was actually asserted, and that the will, as executed, was the result thereof. As stated in Holmes v. Houston, Tex.Civ.App., 241 S.W. 1039, 1051, in order to establish undue influence by circumstantial evidence, "the circumstances relied upon must be so connected and of such probative force as to lead a well-guarded mind to a reasonable conclusion that such influence was exercised prior to the execution of the testament, and that it operated upon and controlled the will power of the testatrix at the time of its execution." See, also, Taylor v. Small, Tex.Civ.App., 71 S.W.2d 895. The evidence in this case fails to meet this test.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.