**FIRESTONE v. SIMS et al.**

No. 14536.

Court of Civil Appeals of Texas.
Fort Worth.

July 9, 1943.

Rehearing Denied Oct. 1, 1943.

Houston McMurry, of Henrietta, and Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellant.

Joe H. Cleveland and Donald & Donald, all of Bowie, for appellees Carmen Sims et al.

Boyd Barjenbruch, of Bowie, for appellee Osgood Warren Boger.

O. O. Franklin, of San Angelo, for appellee Mrs. C. W. Firestone.

McDONALD, Chief Justice.

The appeal before us concerns in part an effort to cancel a will, and also two deeds, on the ground of undue influence, and certain other grounds, and also concerns an effort made by one of the parties to the litigation to establish a parol trust as to an undivided interest in a part of the land involved. Certain other issues were involved in the trial court, but the issues have been narrowed on the appeal to those mentioned. Three causes were consolidated and tried as one. The transcript contains 139 pages and the statement of facts contains 617 pages. An opinion of considerable length will be required to analyze the testimony, and to discuss the applicable rules of law. We shall first describe the general background of the case, and then shall consider separately the two main issues presented by the appeal.

On and prior to February 23, 1937, Mrs. Lucinda Firestone, a widow, owned certain real estate in Clay County, Texas, including one-half of the minerals in a 200 acre tract of land. This mineral interest became valuable enough that an oil and gas lease was sold by Mrs. Firestone in 1938 for the sum of $7,500 in cash and an additional $7,500 to be paid out of oil, if and when produced. Oil has since been produced from the land, but the testimony does not show the amount, nor does it show the present value of the royalty interest.

On February 23, 1937, Mrs. Firestone, who had for many years lived in Henrietta, Texas, and who was then past seventy years of age, executed the will now under attack, by the terms of which all of her property is left to the appellant Tom Fire-

stone, one of her sons. On September 5th, 1938, Mrs. Firestone executed two deeds which by their terms convey to Tom Firestone the real estate above mentioned. Mrs. Firestone died on October 18, 1939. Shortly thereafter Tom Firestone offered his mother's will for probate. Some of the heirs contested the probate of the will. The County Court of Clay County ordered the will probated, whereupon the contestants appealed to the District Court of Clay County. The same persons who contested the will also filed a suit in the District Court of Clay County, seeking to cancel the two deeds mentioned. Also, there was filed a suit by Mrs. C. W. Firestone to establish a parol trust as to an interest in some of the land. Eventually the two suits which had been filed originally in the District Court, and the appeal taken to the District Court in the probate proceeding, were consolidated, they were tried as one suit, and a single judgment was entered. Tom Firestone, the judgment having been adverse to him, has appealed. No complaint has been made by any party of the fact that the three causes were consolidated, and we shall not here undertake to determine whether it is permissible under our practice to consolidate causes of the kind described.

Mrs. Firestone's husband had died some time before the above will was executed, leaving all of his estate to his widow. They had five children, who were, C. W., Harry, John, and Tom, and Helen, who married W. A. Boger. C. W., who was also known as Pat, died after the institution of the litigation, but before the trial, leaving no children. His widow, Mrs. C. W. Firestone, seeks to establish the parol trust above mentioned. Harry Firestone died in 1919, being survived by his widow and seven children. His two sons, John and Lewis Firestone, filed disclaimers in favor of Tom Firestone. His daughters, Mrs. Carmen Sims and four others, and his widow, are the parties who contest the will and who seek to cancel the two deeds. John and C. W. Firestone, the sons of J. H. and Lucinda Firestone, also filed disclaimers in favor of Tom. Helen Boger and her husband W. A. Boger had four children, who will be referred to as the Boger children. Mrs. Boger died in 1930, and her husband was declared insane in 1933. The Boger children were made parties to the litigation, and were adjudged to have an interest in the land and property involved. Tom was adjudged, by reason of the terms of the disclaimer filed by John and C. W. Firestone, and by John and Lewis, the sons of Harry Firestone, to own the interests which would otherwise have been adjudged to them. The controversy upon the appeal therefore lies between Tom, on the one hand, and Carmen Sims and her sisters and the Boger children, on the other, on the issue of the validity of the will and deeds, and between Mrs. C. W. Firestone, on the one hand, and Tom. Mrs. Carmen Sims and her sisters and the Boger children, on the other, on the issue of the parol trust. Harry Firestone's widow was adjudged to have no interest in the property, and has not appealed. W. A. Boger was made a party, was adjudged to have no interest, and has not appealed. W. A. Boger, as an insane person, and the Boger children, as minors, were properly represented in the litigation.

The pleadings are sufficient to put in issue the validity of the will and deeds, the title to the land, and the claim of Mrs. C. W. Firestone as to the parol trust. By a stipulation, all issues relating to accounting for money received by Mrs. Lucinda Firestone or by Tom were severed and agreed to be settled in a subsequent trial.

We shall first take up the attack made upon the will and the two deeds.

The jury found that Mrs. Firestone executed the will and the two deeds; that she was of sound mind upon both occasions; that the deeds were delivered to Tom; and that Mrs. Firestone executed the will and deeds by reason of undue influence exercised by Tom. Upon the latter finding of the jury the court rendered judgment cancelling the will and the deeds.

Under his first point of error Tom contends that there is no competent evidence showing that Mrs. Firestone executed the will and deeds as the result of undue influence exercised by Tom, and with his contention we agree.

As is said by Justice Critz in Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, repeating in substance what he had said in Besteiro v. Besteiro, Tex.Com.App., 65 S.W.2d 759, it is impossible to lay down any hard and fast rule which will govern accurately the question as to whether a given record contains affirmative evidence of undue influence. Every case is different from every other case, and must depend largely on its own facts and circumstances.

In determining whether there are any facts to support the judgment of the trial court, the record should be viewed in its most favorable light to support the same (Besteiro v. Besteiro, supra), and this we shall endeavor to do.

In the year 1936, or before, Mrs. Firestone became afflicted with a cancerous ailment, and at or about the same time fell and suffered a fracture of the hip. It also appears that she suffered from neuritis. Her ailments caused her a great deal of suffering. The physicians attending her were of opinion that operative remedies would not be of any avail, and that the best that could be done for her would be to relieve the pain by administering morphine. She became a morphine addict, and received as much as four thousand quarter-grain doses of the drug from then until the date of her death. One of the physicians taught Tom how to administer the drug to her, and much of the time Tom performed that duty. There was testimony to the effect that such an amount of drugs would cause a person of her age and condition of health to become of unsound mind, but the jury, as has been stated, found that she was of sound mind, and the finding is supported by the testimony of numerous witnesses. After her fall, she was not able to walk without assistance, and spent much of her time in a wheel chair. She lost much weight, and without doubt was in a condition of poor health.

Tom, a man nearing fifty years of age, and single, quit his employment as a member of the fire department at Henrietta, in 1936, and devoted practically all of his time to caring for his mother. He may have done a few odd jobs after 1936. During some of the time a woman would be employed to assist with the housework, but during most of the time Tom cooked the meals, kept the house, waited upon his mother, gave her the injections of morphine, lifted her into and out of the bath, carried her to the automobile when she was taken anywhere in it, and assisted her to some extent in the handling of her affairs. A considerable number of checks drawn upon Mrs. Firestone's bank account were introduced in evidence. All of them were signed in the name of Mrs. Firestone, by Tom. It is only fair to say that no charge is made that Tom misappropriated any of the money. Tom also helped to take care of the Boger children. Mrs. Boger, it has been mentioned, died in 1930. Either then, or not long thereafter, the Boger children were taken into Mrs. Firestone's home, and were cared for by her and Tom, with some of the other relatives assisting to some extent. In 1937, as well as we can ascertain from the evidence, three of the four children were sent to an orphanage. In 1938, not long after Mrs. Firestone received the $7,500 from the sale of the oil lease, she sent for the children, and paid the orphanage $1,250 for caring for them. We observe that this check was actually signed by Tom, and is dated October 5, 1938, at a time when he could reasonably expect that all funds not expended during his mother's lifetime would come to him upon her death. They lived with Mrs. Firestone until her death, and continued to live after that time with Tom in the home which had been occupied by Mrs. Firestone.

In March of 1938, Mrs. Firestone contracted to sell the oil lease above mentioned. The agent who negotiated the deal testified that he dealt with Mrs. Firestone, and that she, and not Tom, made the deal. Other persons, including the employees in stores with which Mrs. Firestone traded, testified that Mrs. Firestone dealt with them with regard to her purchases, although Tom often brought the check for the grocery bill, and usually signed the check for his mother. Altogether some twenty-five witnesses testified that they knew Mrs. Firestone, that she was a person of sound mind, that she gave the instructions regarding her household and business affairs, and that she was a woman of strong character and determination. Most of them said that she was not a woman who could be easily influenced.

Mrs. Jim Alcorn, who is not shown to have had any interest in the outcome of the case, testified, without contradiction, that Mrs. Firestone requested her to have Mr. Houston McMurry come to her home for the purpose of preparing her will. The record shows that Mr. McMurry had practiced law for several years in Henrietta, that he had known Mrs. Firestone for a long while, and that he later represented her in a lawsuit. Mr. McMurry testified that Mrs. Alcorn came after him; that he took his typewriter to Mrs. Firestone's home; that he talked with her for a few minutes before the making of a will was mentioned; that he was of opinion that Mrs. Firestone was of sound mind at the time; that Mrs. Firestone told him that she wanted to make a will; that he pre-

pared it in her presence; that he read it to her and that she then took it and read it herself; that she signed it in his presence and in the presence of Mrs. Alcorn, declared it to be her last will, and requested him and Mrs. Alcorn to witness the will, and that they did so. He testified that Tom was in the house at the time, and sometimes in the room with them, but that he was not in the room at the time the will was prepared. Mrs. Alcorn testified to the same effect, and also said that when Mr. McMurry arrived Mrs. Firestone called Tom into the room and said, "I am going to write my will and will leave it to you, and tell me what to do." Tom replied, "Granny, I can't tell you or anybody how to write a will; you do what you want to, and I'll abide by it."

There is no direct evidence that Tom Firestone exercised any influence, due or undue, in bringing about the making of the will. The testimony of Mr. McMurry and of Mrs. Alcorn is uncontradicted. There is nothing in the record to show that Mrs. Firestone was under the influence of drugs at the time, or that Tom then, or at any other time, induced or sought to induce his mother to do anything by a threat of withholding the drug from her.

Mrs. Alcorn testified that Mrs. Firestone often spoke of Tom's kindness and goodness to her, and that Mrs. Firestone told her that she was leaving the property to Tom so that he would be able to take care of the Boger children.

Mr. Frank Ikard, an attorney who for some years had been living in Wichita Falls, but who had lived many years in Henrietta, prepared the deeds in question. He testified that he was well acquainted with Mrs. Firestone, and that he would often visit her while in Henrietta, sometimes taking his grandmother with him to see her. He testified that he also handled other legal business for Mrs. Firestone. He was of opinion that Mrs. Firestone was of sound mind at the time. According to his testimony, Mrs. Firestone sent for him; he went to see her at her home; she told him that she wanted a deed prepared conveying what real estate she had to Tom; she wanted Tom to have the property; he discussed the matter with her several times; on August 31, 1938, he prepared the deeds in his office in Wichita Falls, and carried them to Mrs. Firestone; he was not a notary public of Clay County, and

could not take her acknowledgment; he instructed her that to make the deeds effective she must sign them before a notary and deliver them to Tom. Clearly, the import of Mr. Ikard's testimony is that it was Mrs. Firestone, and not Tom, who ordered the preparation of the deeds. His testimony is not contradicted.

Mr. T. K. Howard was the notary who took Mrs. Firestone's acknowledgments to the deeds. Mr. Howard had been in the real estate and insurance business in Henrietta since 1916. He had been City Clerk and Mayor of Henrietta, and County Judge of Clay County. He had known Mrs. Firestone for forty years. He testified that Tom brought Mrs. Firestone in a car to Mr. Howard's office. Mr. Howard walked out to the car and talked to Mrs. Firestone. She told him that she had a couple of instruments that she wanted him to sign. She signed the deeds in his presence, he took her acknowledgments, placed his signature and seal thereon, and returned the deeds to Mrs. Firestone. His recollection is that Tom did not say anything, but that he might have said something. Mr. Howard was of opinion that she was then of sound mind. He testified that he had known Mrs. Firestone rather intimately, that he had had business dealings with her, and that he had found her to be a person of strong will.

Mrs. Linsley testified that she kept house for Mrs. Firestone from April of 1938 until March of 1939; that she recalled the instance of Mrs. Firestone going with Tom to sign the deeds; that Tom had to carry her out to the car; that when they returned Tom placed her on the bed, and that Mrs. Firestone handed the deeds to Tom and said, "Now, put these where you can get them when you need them." She quoted Mrs. Firestone as having said that she was leaving everything to Tom so that he could take care of the Boger children.

The contestants attach importance to the statement of Mrs. Linsley to the effect that Mrs. Firestone said that she was afraid that her will could be broken. She also quoted Mrs. Firestone as having said that she wanted to make sure that Tom would receive the property, so she was going to fix it so it could not be broken. We find nothing in this statement which tends to prove that Tom Firestone exercised undue influence over his mother. If she felt that she wanted Tom to have the property, it was only reasonable that she should take

every precaution against having her wishes defeated. It is interesting to note that in the Besteiro case, supra, the grantor's attorney asked her why she did not dispose of her property by will rather than by deed, and that in reply she expressed the fear that her will might be broken.

Referring again to the preparation and signing of the deeds, the record shows that Mr. Ikard discussed the matter with Mrs. Firestone several times, he then prepared the deeds in Wichita Falls, he delivered them to her on August 31st, and she signed them six days later. She had signed the will a year and a half before. She feared that the will might be broken. She told friends that she wanted Tom to have the property so he would be able to take care of the Boger children, whose mother was dead and whose father was insane, she wanted to make sure that Tom would get the property, she discussed the deeds several times with her attorney, and after several days she signed them and delivered them to Tom.

 Not only is there a complete lack of direct evidence of undue influence, but, according to our view, the circumstantial evidence militates against the theory of undue influence. The contestants argue, with reason, that undue influence can usually be proved only by circumstantial evidence. But there must be something more than mere speculation. In 32 C.J.S., Evidence, § 1044, p. 1129, it is said: "A verdict or finding may be based on inferences fairly drawn from the facts in evidence. An inference cannot be based on surmise or speculation, and is without probative force if inconsistent with undisputed or clearly established facts." It is said by Judge Critz in the Besteiro case [65 S.W. 2d 762]: "It is, however, certainly necessary for the attacking party to introduce some tangible and satisfactory proof, direct or circumstantial, that the grantor's free will has been overcome by the undue influence alleged, so that the deed does not in fact express his (grantor's) wishes, as to the disposition of his property, but the wishes of the person exercising the undue influence."

 Contestants assert that Mrs. Firestone's condition, her addiction to drugs, and the unusual opportunity which Tom had to exert undue influence over her, coupled with what they view as an unnatural disposition of her property, are enough to support the verdict. It cannot

be denied that the unusual opportunity to exert undue influence was present. There was testimony that a person addicted to the use of such drugs will do almost any bidding of the one who administers the drug. But still, we think, there must be at least some evidence, of a tangible nature, that such influence was in fact exercised. The evidence is undisputed that Tom administered the medicine upon instructions of physicians. The performance of such services for his mother is equally as consistent with a theory of innocence as it is with a theory of wrong-doing on his part. And as for the idea of an unnatural disposition of property, the disposition made of the property, under the circumstances, was not so unnatural as of itself to give rise to an inference of undue influence. The facts of the Besteiro case, especially as they are described in the opinion of the Court of Civil Appeals, in 45 S.W.2d 379, are similar in many ways to those of the case at bar, and much of what is said by both the Court of Civil Appeals and the Commission of Appeals in that case is applicable here.

 Tom did not file the deeds of record until after his mother's death, and not then until after the will contest had been filed. We do not consider that this is any proof of undue influence. An act of negligence altogether too common is the failure to file deeds promptly after they are executed.

 We do not consider of probative value the testimony of the two physicians who more or less undertook to testify, in answer to hypothetical questions, that Mrs. Firestone was under Tom's domination when the will and when the deeds were signed. If their testimony is merely that a person in Mrs. Firestone's condition and situation would be susceptible of being dominated by one in Tom's situation, it is short of proof that the domination was exercised. If their testimony is that Tom actually dominated his mother, then it is, in our judgment, of no probative value. One of them had never seen Mrs. Firestone. The other saw her one time, about two months before the deeds were signed, and long after the will was executed. In either case it is too far-fetched an idea to suppose that either of the witnesses could give an opinion of any probative value as to whether Mrs. Firestone was in fact dominated by Tom when

the instruments in question were executed. For a decision somewhat in point, see Jones v. Selman, Tex.Civ.App., 109 S.W. 2d 1003, writ of error dismissed.

■ Contestants appear to be of opinion that Tom Firestone was in such a fiduciary position as to place upon him the burden of showing that undue influence was not exercised. The contrary rule is announced in 14 Tex.Jur. 863, and authorities there cited. In the Besteiro case it is held that the rules in cases involving deeds are the same as in those involving wills.

Contestants rely upon Long v. Long, supra, and other cases which we shall mention. As has been said, Judge Critz wrote the opinions in both Long v. Long and Besteiro v. Besteiro. In both of those cases great importance is attached to the circumstances immediately surrounding the execution of the will, or deed, and it is noted with care in the Besteiro case that the grantor sent for her attorney, and told him what she wanted done, while in the Long case the beneficiary employed his attorney to prepare the will, and the beneficiary told the attorney what to put in the will.

Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138, deals chiefly with the admissibility of certain evidence, and does not furnish us much aid in weighing the testimony in the present case. Craycroft v. Crawford, Tex.Com.App., 285 S.W. 275, rehearing denied Tex.Com.App., 287 S. W. 244, contains many circumstances of a character unlike those in the present case. Holmes v. Houston, Tex.Civ.App., 241 S.W. 1039, according to our view, supports the contentions of the proponent of the will rather than those of the contestants. The facts in Beadle v. McCrabb, Tex.Civ.App., 199 S.W. 355, are so incomparable with the facts before us as to make the cases readily distinguishable. Pendell v. Apodaca, Tex.Civ.App., 221 S. W. 682, contains general language which might tend to support contestants' contentions, but is not controlling in view of the other cases herein cited. The same may be said of Rounds v. Coleman, Tex. Civ.App., 189 S.W. 1086, and of Russell v. Boyles, Tex.Civ.App., 29 S.W.2d 891, writ dismissed. Rounds v. Coleman is, however, authority against contestants' theory that Tom Firestone occupied a fiduciary relationship by reason of the fact that he assisted his mother in some of her affairs. In Moore v. Horne, Tex. Civ.App., 136 S.W.2d 638, writ of error dismissed, correct judgment, the testatrix could not read, write, or speak the English language, she was ninety-one years of age, and the Court of Civil Appeals observed that it could be inferred from the evidence that the beneficiary in reality directed the transaction when the attorney prepared the will and it was signed.

We have discussed the matter at unusual length. If Tom Firestone exercised such undue influence as to cause his wishes to be substituted for those of his mother, then the instruments ought to be declared invalid. If, on the other hand, they represent her wishes and desires, then it is our duty to give effect to them.

We have also compared the evidence in the present case with that in the following cases, and believe that they support our holding: Morrison v. Thoman, 99 Tex. 248, 89 S.W. 409; Hill v. Crow, Tex.Civ.App., 241 S.W. 184; Holmes v. Houston, Tex.Civ.App., 241 S.W. 1039; Adkins v. Henson, Tex.Civ.App., 256 S. W. 967, writ of error dismissed; Decker v. Koenig, Tex.Civ.App., 37 S.W.2d 378, writ of error dismissed; Shofner v. Shofner, Tex.Civ.App., 105 S.W.2d 418, writ of error refused; Jones v. Selman, Tex.Civ.App., 109 S.W.2d 1003, writ of error dismissed; Koger v. Coker, Tex. Civ.App., 111 S.W.2d 357; and Bridges v. Howell, Tex.Civ.App., 122 S.W.2d 665.

Certain testimony was admitted over objection of appellant, complaint of which is made by appellant in his points of error. We are of opinion that the testimony in question was hearsay, and that its admission was error.

We shall now consider the parol trust claim asserted by Mrs. C. W. Firestone.

As has been mentioned, C. W. Firestone, also known as Pat, was one of Lucinda Firestone's sons. He died after this litigation was instituted, but before the trial. Before his death he had joined with his brother John, and his nephews John and Lewis Firestone, in executing a disclaimer in favor of Tom. After his death, his widow, Mrs. C. W. Firestone, became a party to the litigation, and asserted claim to a 21/67ths undivided interest in the minerals in the 200 acre tract above referred to. In 1930 W. A. Boger, Mrs. Lucinda Firestone's son-in-law, executed a conveyance to Mrs. Lucinda Firestone of

half the minerals in a certain 200 acre tract of land in Clay County, which is the same tract covered by the oil and gas lease several times referred to in this opinion. The deed also conveys a small tract of land in the City of Henrietta. The deed recites a consideration of ten dollars and other good and valuable considerations. Mrs. C. W. Firestone's contention is that she paid a part of the consideration for such property, and that Mrs. Lucinda Firestone took the title in trust for the benefit of herself and Mrs. C. W. Firestone.

As has been mentioned, Mrs. Lucinda Firestone contracted in 1938 to sell an oil and gas lease on the 200 acres. The purchaser raised an objection to the title, based on the fact that W. A. Boger was declared insane in 1933, about three years after he executed the conveyance in question. A certain suit, referred to as Cause No. 6084, was filed in the District Court of Clay County, in 1938, on behalf on W. A. Boger, to cancel the conveyance. Mrs. Lucinda Firestone answered, contending that the conveyance was made in consideration of the cancellation of certain notes. There was filed in said cause No. 6084 a stipulation, made by the attorneys for the respective parties, reciting that the consideration for the conveyance was the cancellation of community indebtedness owing by Boger and his wife Helen Boger, the notes being listed according to their respective dates, due dates, and amounts, but not naming the payee therein. They were listed as being a note dated June 14, 1921, for $1,000, a note dated June 14, 1921, for $500, a note dated June 1 1921, for $1,050, and a note dated June 7, 1920, for $800. Judgment was rendered in cause No. 6084 affirming the conveyance. Mrs. C. W. Firestone introduced in evidence in the present cause a note dated June 1, 1921, executed by Boger, payable to the order of Corwin Firestone (it being agreed that Corwin was C. W. Firestone), and testified that her husband gave her the note in 1922, and that she thereafter owned the note as her separate property. She testified that the note just described was the same note that was referred to in the stipulation made in cause No. 6084—in other words, that it was one of the notes which constituted the consideration for the conveyance from Boger to Mrs. Lucinda Firestone.

Over the objection by appellant that her testimony was in contravention of Art. 3716, Rev.St., Mrs. C. W. Firestone testified in substance as follows concerning conversations between her and Mrs. Lucinda Firestone:

Mrs. Lucinda Firestone sent for Mrs. C. W. Firestone the morning after she made the will. In Tom's presence Mrs. Lucinda Firestone said to Mrs. C. W. Firestone, "Dink (Mrs. C. W. Firestone), I have made a will and I have left everything to Tom because Tom said he could handle it so much better if it was all in one name and didn't have to consult others, but he has promised to look after your interest and divide mine with John and Pat."

She was asked the following question and gave the following answer: "Q. All right. Now, Mrs. Firestone, you claim that you had a $1050.00 note that was used to buy that property from Boger? A. Well, I don't know just exactly what it was used for. See, they bought the mineral rights back."

Later she testified that the four notes referred to, including the $1,050 note payable to her husband, constituted the consideration for the deed. Mrs. Lucinda Firestone told her about it a short while after the deed was signed. She and Mrs. Lucinda Firestone afterwards talked many times about the mineral interest being purchased by cancellation of the four notes, and before the property had any value they would laugh about what they were going to do if it ever amounted to anything. Mrs. Lucinda Firestone at all times recognized her interest in the property. Neither Tom nor his mother ever denied her interest in the property until after the present litigation was begun. She had never received any money, rents, or income from the property. At the time of the proceedings in cause No. 6084, in 1938, John and Tom Firestone came by Mrs. C. W. Firestone's house and asked for the $1,050 note, to quote from her testimony, "to bring down here to show the reason this mineral right was deeded to Mrs. Firestone and her three notes and my one note was the reason the mineral right was deeded". Tom brought the note back to her.

The above is, we believe, all of the testimony of Mrs. C. W. Firestone relating to her claim of a parol trust, construed most favorably to her.

The jury found (1) that Mrs. C. W. Firestone was the owner of the $1,050 note; (2) that Mrs. Lucinda Firestone "on December 18, 1930, recognized the ownership of Mrs. C. W. Firestone to her pro rata part of the minerals in the land described in the instrument introduced in evidence" (the deed from Boger); and (3) that Mrs. Lucinda Firestone did not at any time thereafter repudiate the trust interest of Mrs. C. W. Firestone in said property. Upon these findings the trial court adjudged Mrs. C. W. Firestone to own a 21/67ths undivided interest in such property, and that she should recover a like interest in all rents, revenues, royalties, and proceeds derived from the sale or leasing, as should be disclosed upon proper audit. By the stipulation already referred to, the last mentioned issue has been severed for determination in a later trial.

Tom attacks this portion of the judgment upon the following grounds: (1) That there is no competent evidence showing that at the time Boger conveyed the property to Mrs. Lucinda Firestone, on December 18, 1930, a trust was created for the benefit of Mrs. C. W. Firestone; (2) that the undisputed evidence shows that C. W. Firestone executed and delivered to Tom a disclaimer, and that the trial court for such reason should have instructed a verdict against Mrs. C. W. Firestone; (3) that Mrs. C. W. Firestone's testimony that she had acquired the note from her husband was admitted in violation of Art. 3716, and (4) that Mrs. C. W. Firestone is estopped to assert the claim of a parol trust. The contentions will be discussed in the above order.

■ Appellant does not have in his brief a point of error complaining of the admission in evidence of Mrs. C. W. Firestone's testimony concerning her conversations with Mrs. Lucinda Firestone, although he made objection thereto in the trial court, but urges that such evidence is incompetent to prove the parol trust. We observe that this question was discussed by both the Court of Civil Appeals and the Commission of Appeals in the Besteiro case, supra. The Court of Civil Appeals held that such evidence, whether objected to or not, was incompetent to support the judgment. The Commission of Appeals held, however, that such testimony has probative force if not objected to, but left open the exact question which we have here, and that is, whether we must treat the evidence as having probative force when it is objected to in the trial court, but where its admission is not complained of by a point of error specifically complaining of its admission. In view of the present rules of practice, and the office of points of error in briefs, we are of opinion that the competency of the evidence to support the judgment is sufficiently raised where objection thereto is made in the trial court, and where the point of error in the brief complains that there is no competent evidence to support the judgment, where the statement and argument under the point of error clearly raise the issue. Under the point of error mentioned, appellant seeks not a reversal and remand because of the admission of the allegedly improper evidence, but seeks a reversal and rendition on the ground that there is no competent evidence to support the judgment. A point of error complaining only of the improper admission of the testimony would accomplish only a reversal and remand. So, it seems to us, appellant's method of presenting the question is the only method of accomplishing that which he seeks. It therefore becomes necessary to pass upon the admissibility, or competency, of the evidence complained of.

Art. 3716 is as follows: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

■ Mrs. C. W. Firestone argues against the applicability of the statute on the ground that her suit is against Tom in his capacity as devisee in the will, and in his capacity as grantee in the deed, and that the suit is not therefore by or against such a party as is named in the statute, relying upon such authorities as House v. Rogers, Tex.Civ.App., 23 S.W.2d 414, affirmed in Rogers v. House, Tex.Com.App., 39 S.W.2d 1111. The flaw in the argument is that her suit is not only against Tom, in the capacities named, but is also against the estate of Mrs. Lucinda Firestone, for an accounting of the funds received before her death, and also is against Mrs. Carmen Sims and her sisters and the Boger chil-

dren, who are heirs of Mrs. Lucinda Firestone. While the judgment rendered by us eliminates the claim of Mrs. Carmen Sims and the Boger children, and while the parties, after the evidence was closed and the case had been submitted to the jury, agreed to sever the accounting feature of the case, the character of Mrs. Firestone's suit was such that it was, at least in part, a suit against Tom as executor of the estate, and against the others mentioned as heirs. Also, if the will and the deeds be set aside, then her suit against Tom is in his capacity as an heir, and not as a devisee or grantee. As the trial court rendered judgment, the interest adjudged to Tom, to Mrs. Carmen Sims and her sisters, and to the Boger children, were adjudged to them as heirs, and their interests were reduced by reason of the interest adjudged to Mrs. C. W. Firestone. The consolidation of the suits was made without objection from Mrs. C. W. Firestone. It seems clear to us that the admission of the evidence mentioned must be held to be in contravention of the terms of Art. 3716. If we be correct in this holding, then there is no evidence to show a parol trust.

■ We had occasion to discuss the question of parol trusts at some length in Elbert v. Waples-Platter Co., Tex.Civ.App., 156 S.W.2d 146, writ of error refused for want of merit. As shown by the authorities there cited, it is not enough merely to show payment of all or a part of the consideration. There must also be shown an agreement by the alleged trustee, made prior to or at the time of the conveyance, to take the title in trust. The only evidence of such an agreement on the part of Mrs. Lucinda Firestone was that contained in the testimony of Mrs. C. W. Firestone. And it may be seriously doubted whether her testimony, even if it be considered, is sufficient to show an agreement made prior to or at the time of the conveyance from Boger. Mrs. C. W. Firestone did not testify that she and Mrs. Lucinda Firestone made any kind of agreement prior to or at the time of the Boger conveyance. She did not testify at all as to the circumstances surrounding the transaction. She testified only that her note was used as a part of the consideration for the deed, giving none of the details of the circumstances, and

that at a later date Mrs. Lucinda Firestone recognized Mrs. C. W. Firestone's interest in the property. A trust cannot be engrafted upon the title by an oral agreement made subsequent to the time of the conveyance. See authorities cited in Elbert v. Waples-Platter Co.

■ Mrs. C. W. Firestone further argues that she was called upon by an adverse party to the suit to testify about her conversations with Mrs. Lucinda Firestone, and that her evidence was therefore properly admitted. We overrule this contention. She was not so called to testify by Tom Firestone, and he objected to her testimony. We are not able to see that Tom's right to object to the testimony could be waived by some other party to the suit.

■ We overrule appellant's contention that the disclaimer made by C. W. Firestone could operate to cut off Mrs. C. W. Firestone's claim based upon the alleged parol trust. Her claim, if any she had, was her separate estate, and obviously not subject to cancellation by the act of her husband alone.

In view of what has been said, it is unnecessary to pass upon the other two points of error mentioned.

The judgment of the trial court is reversed, insofar as it decrees a cancellation of the will and the deeds, insofar as it adjudges Mrs. Carmen Sims and her sisters, the Boger children and Mrs. C. W. Firestone to have any interest in the property, insofar as it denies the probate of the will, insofar as it fails to vest title to all of the property in Tom, subject, of course, to the administration of the estate of Mrs. Lucinda Firestone, and insofar as it adjudges the costs against Tom, and judgment is here rendered ordering the probate of the will, such judgment to be certified to the county court for observance, and denying any recovery to Mrs. C. W. Firestone, Mrs. Carmen Sims and her sisters, and the Boger children, and adjudging the title to all of the land and property in dispute to be in Tom Firestone, subject only to the administration of Mrs. Lucinda Firestone's estate, and adjudging to Tom his costs. In all other respects the judgment of the trial court is left undisturbed.