**LYNN v. JACKSON et al.**

**No. 12040.**

Court of Civil Appeals of Texas. Galveston.
Dec. 23, 1948.

Rehearing Denied Jan. 13, 1949.

Wardlow Lane, of Center, J. D. Pickett and B. R. Reeves, both of Palestine, and W. S. Leslie, of San Angelo, for appellant.

W. C. Campbell, of Palestine, and Leslie Jackson and Franklin E. Spafford, both of Dallas, for appellees.

GRAVES, Justice.

This was a will-contest, tried de novo in the District Court of Anderson County, Texas, before a jury, on a single special issue of whether the instrument purporting to be the last-will and testament of Laura Parker Lynn was procured through undue influence exerted on her by her husband, J. M. (Mack) Lynn. In fact, it purported to be the joint-will of the two, as the full copy thereof, hereto attached and made a

**650**

part hereof, discloses.[1] Both are now dead, the husband having predeceased his wife.

Upon the jury's answering the special issue "yes," that the will was procured by such undue influence, the court rendered

[1] Exhibit

The State of Texas
County of Anderson

Know All Men by These Presents:

That we, J. M. ·Lynn, and wife, Laura Parker Lynn, of the County of Anderson, State of Texas, being in good health and of sound mind and disposing mind and memory, and being desirous of settling our worldly affairs while we have the strength to do so, do make and publish this our last will and testament, hereby revoking all former wills by us heretofore made.

### First

It is our joint will and desire, that our bodies be buried in a decent and Christianlike manner, suitable to our circumstances and condition in life.

### Second

It is our desire that upon the death of either of us that no flowers be placed upon our graves by our friends, as we regard the purchasing of flowers would be needless expenses to our friends.

### Third

It is our joint will and desire that our just debts be paid out of our estate without delay by the survivor, or by the executor of this our last will, to be hereinafter named.

### Fourth

It is our joint desire that upon the death of either of us, that all the property both real and personal belonging to us, or either of us, shall pass to and vest in fee simple to the survivor as long as the survivor shall live, to manage as the survivor shall see fit, and to enjoy all the rents and revenue for the term of the natural life of the survivors, and that upon the death of the survivor, the entire estate·to pass into the care and control of the executor to be administered as follows:

### Fifth

We, and each of us give and bequeath after the death of the survivor, the estate as follows: that is, said estate remaining after all debts, including funeral expense and expense incident to the probating of this will.

To Mae Walker, five percent (5%) of said estate;

To Lola Burster, seven (7%) percent of said estate;

To Stuart Willoughby, three percent (3%) of said estate;

To Lynn Willoughby, three percent (3%) of said estate;

To Geneva Donalson, three percent (3%) of said estate:

To Irma Bradley, three percent (3%) of said estate;

To Zelda Knight, three percent (3%) of said estate;

To Nora Oneal, three percent (3%) of said estate;

To Rice Lynn, two percent (2%) of said estate;

To Harvey Lynn, twelve percent (12%) of said estate;

To Chilton Lynn, twelve percent (12%) of said estate;

To Devilla Lynn, three percent (3%) of said estate;

To W. H. Lynn, twelve percent (12%) of said estate;

To Lois Parker Lane, twelve percent (12%) of said estate;

To Quida Kennedy, six percent (6%) of said estate;

For Joan Sheridan, to W. H. Lynn, as trustee, three percent (3%) of said estate, to be used by him for her use and benefit as follows: When she shall have reached the age of eighteen years, he is to expend this sum in the manner he deems most advantageous to the said ·Joan Sheridan, that is, either, (1) the further education of the said Joan Sheridan, or, (2) to purchase for the said Joan Sheridan a home, and in the event the home is purchased, the said Joan Sheridan shall not have the right to sell, transfer, convey, or encumber the same or any part thereof for a period of twenty years from the date of such purchase, nor shall the same be seized, attached or in any manner taken by any judicial proceedings· or court process until the expiration of said twenty year period. If there should be a· remainder left after the above bequests have been paid, it is our desire that such remainder should be distributed to the foregoing in the proportion above set forth.

### Sixth

It is our joint will and desire, that upon the death of the survivor, that our executor shall convert all our property into money to the best advantage possible, and make the distribution above set forth.

### Seventh

We, and each of us do hereby constitute and appoint our beloved nephew, W. H. Lynn of Wellington, Texas, sole executor of this our will, and direct that no bond or security be required of him as such, and the County Court exercise no other authority over our estate than to probate this will and receive an Inventory and Appraisement of our estate,

judgment decreeing the same to be null and void, insofar as it appeared to be the last will and testament of Laura Parker Lynn, and denying the probate thereof as such.

In this Court appellant, named in the will by its makers as their nephew and sole executor, challenges the judgment so adverse to him below upon some seven points-of-error, the gist of which—in addition to several procedural complaints against the court's respective rulings upon the admission and rejection of testimony—is to the effect that there was no competent evidence of probative value that the will was the product of undue influence of J. M. Lynn on his wife, the testatrix; or, if there was any such evidence, it was insufficient to support the jury's finding that such undue influence was exerted; wherefore, the trial court erred, first in submitting such inquiries to the jury, and second, in not setting their verdict aside upon that ground.

The appellees, in turn, while affirming the correctness of the judgment as rendered, first present cross-points here to the effect that the trial court erred in overruling their motions—urged, respectively, both at the close of appellant's testimony, and also at the close of all the testimony in the cause—for an instructed verdict in their favor upon the alleged ground that the proffered will was—upon its face—inherently invalid and not susceptible of probate as a will, for a number of specified reasons. The main one of these was that it so overtly appeared not to have been contractual in nature, nor had any evidence been offered in support of it; that it had not been executed between the parties'

thereto in pursuance of any agreement between them as to the disposition of their several properties "as one common fund, and to take effect only at the death of the survivor", etc.

This Court, following a review of the extended record—aided by helpful briefs and oral arguments from both sides—is constrained to hold as follows:

(1) That the trial court erred in not holding with the appellant that there was no competent evidence of probative value that this will was the product of undue influence of the husband over his wife;

(2) That, in any event, if there was an issue-of-fact raised as to such undue influence, the jury's verdict finding it was so exerted as to bring about the execution of the will was so against the overwhelming weight and preponderance of the testimony as a whole as to be clearly wrong;

(3) That the trial court was correct in its overruling of the appellees' recited-motions for peremptory instruction in their favor, and in holding in that behalf that the challenged instrument was not void upon its face as a will, but was at least testamentary in character, and hence was subject to admission to probate as such, if there had been proper proof thereof.

An examination of the will itself shows that, intrinsically, and upon the face thereof, it met the full requirements of our Statutes on Wills, as they appear in Vernon's Texas Statutes, 1948, Title 129, and of particular Articles 8283 and 8297 thereof, prescribing, respectively, the basic requisites thereof, and the proof by witnesses thereto.

Likewise, it is thought that appel-

which we request him to do as soon after death of the survivor as possible, and hereby confer upon him power to sell and dispose of all our property either at public sale as to him may seem best, for the purpose of paying our debts, and expenses for carrying out, and paying off the above legacies, and winding up our estate in accordance with our will as herein set forth.

In witness whereof we have hereto set our hands this the 11 day of November, 1940.

J. M. Lynn
Laura Parker Lynn

Signed, declared and published by J. M. Lynn and wife, Laura Parker Lynn, as their last will and testament, in the presence of us, the attesting witnesses who have hereto subscribed our names in the presence of the said J. M. Lynn and wife, Laura Parker Lynn, and in the presence of each other, at their special instance and request, this the 11 day of November, 1940.

Ollie Lasiter
Nolan Buckhanan
Witnesses.

lees' stated-construction in their motions for peremptory instruction in their own favor that "the purported will is not to take effect until the death of the survivor", is erroneous, since this recitation in Paragraph 4 of the copied will is directly to the contrary: "It is our joint desire that upon the death of either of us that all of the property, both real and personal, belonging to us or either of us, shall pass to and vest in fee simple to the survivor * * *."

■ In other words, it seems clear that this will does not, upon its face, run counter to any of "the rules and regulations prescribed by law, as recited in R.S. Art. 8281 [Vernon's Ann.Civ.St. art. 8281], supra".

■ Whereas, extrinsically, the record brought here seems to this Court to conclusively show that the execution and delivery of the will was shown to have been accomplished under all the requirements and solemnities so prescribed in our law for the accomplishment of those purposes; and that, in consequence, all the vast testimony presented and urged by the contestants of it below—the appellees here—failed to raise a material issue-of-fact to the contrary; or, to say the least of it, if that great body of testimony—in some instances reaching back to 25 years before the making of the will—did have any probative value concretely indicative of any undue influence in the actual making of the will, it was so overwhelmed by direct and immediate proof to the contrary as to have become completely cancelled out in its effect.

Indeed, first and foremost, was the testimony of the two witnesses to the will, Mrs. Ollie Lasiter, and Mr. Nolan Buckhanan. These two persons were fully competent in every way to serve as witnesses, were fellow-residents of the community, Mrs. Lasiter being an old friend of the Lynn family, and Mr. Buckhanan being an employee of the couple at that time. Both testified that they were called in by the couple for that purpose, and requested by them to witness their signatures, after being told what the will was; in fact, Mrs. Lasiter recalled distinctly the particular part that Mrs.

Lynn had taken in bringing about the signing of the will, saying, after the four of them had assembled in the Lynn home for that purpose—that is, Mr. and Mrs. Lynn, Mrs. Lasiter, and Mr. Buckhanan—this:

"Q. Who talked first about it? A. Mrs. Lynn first, in the kitchen when I went in.

"Q. Was there anyone else in the kitchen? A. No sir.

"Q. What did she say to you? I know it has been a long time, but do you remember what was said? A. Well, I don't recollect her exact words. She told me they had made a will, and asked if I would witness it for them. I told her I would.

"Q. Did she say anything else about the will? A. Not right then.

"Q. Later? A. Yes sir, on the inside, she was standing there and said that was the first will they had made that suited both parties."

Likewise, Mr. Buckhanan thus responded to inquiries about the same occasion:

"Q. Did they execute the will there, both of them, J. M. Lynn and Laura Parker Lynn? A. Yes sir.

\* \* \* \* \* \*

"Q. Who signed the will as witness? A. Mrs. Ollie and myself."

The general setting under which the will was thus so proven to have been executed, and reflecting the relation of this litigation back to it, may be fairly had, it is thought, from this summary of the surrounding and contributing facts in appellant's brief, which appears to this Court to reflect the undisputed general features, to-wit:

"That Laura Parker Lynn, testatrix, and J. M. Lynn, her husband, were married April 17, 1904, and lived together continuously as husband and wife, without separation or divorce, until his death on December 28, 1944; that Laura Parker Lynn died December 7, 1945; that she was a woman possessed of good mind up until a few hours of her death; that the purported will in question was signed November 11, 1940, jointly by both J. M. Lynn and Laura Parker Lynn, in the presence of two subscribing-witnesses; that there were no children born of said marriage; that the

parties involved in this suit are nieces and nephews and grand-nieces and nephews; that contestants are heirs-at-law of Laura Parker Lynn; that, under the terms of the will, approximately four-fifths (⅘) of the estate was left to J. M. Lynn's relatives, and the remaining one-fifth (⅕) to relatives of Laura Parker Lynn; that approximately half of the estate was realty that came to Laura Parker Lynn under the will of her brother, Ben F. Parker; * * * that, under the will in question, the largest bequest to anyone is twelve per cent (12%) of the estate, * * *; that contestants base their contest of the will herein upon their claim that undue influence was exerted upon Laura Parker Lynn by J. M. Lynn in the execution of the will; and they rely entirely upon circumstantial evidence to support such claim."

As just thus indicated, the appellees, as against such proof of the contents, execution, and existence of the will, admittedly did rely upon circumstantial evidence alone to support their claim of undue influence.

Not only so, but they concede further that the entire record is devoid of any concrete proof of any act, conversation, or statements, having ever at any time been made by Mr. Lynn to his wife, touching the making by her, or the execution of, her will.

Further, they themselves offered testimony to the effect that Mrs. Lynn was a woman of ability and sound mind right up until the time of her death, some four years after the execution by her of the will involved; that she lived over eleven months after Mr. Lynn's death, during which time she engaged in several real-estate sales, carried on her usual business, and never revoked this will, nor attempted to do so.

In such circumstances, with the evidence thus affirmatively negativing the existence of any overt, tangible, or active undue influence—that is, such influence as must have caused Mrs. Lynn to make a will that she did not want to make, the conclusion seems inescapable that she had been entirely satisfied with this one, as the quoted statement she made to the attesting-witness, Mrs. Lasiter, indicated.

Under our Texas authorities, a will so executed, it is held, should have been admitted to probate. Gainer v. Johnson, Tex. Civ.App., 211 S.W.2d 789; Brodt v. Brodt, Tex.Civ.App., 91 S.W.2d 837, error dismissed; Shofner v. Shofner, Tex.Civ.App., 105 S.W.2d 418, writ refused; Firestone v. Sims, Tex.Civ.App., 174 S.W.2d 279, writ refused; Cameron v. Houston Land & Trust Co., Tex.Civ.App., 175 S.W.2d 468, writ refused; Olds v. Traylor, Tex.Civ. App., 180 S.W.2d 511, writ refused; Bonilla v. Lujan, Tex.Civ.App., 168 S.W.2d 691, writ refused; Hulme v. Jaschke, TexCiv. App., 168 S.W.2d 326, writ refused; Burgess v. Sylvester, Tex.Civ.App., 177 S.W. 2d 271, affirmed on writ, 143 Tex. 25, 182 S.W.2d 358; Koger v. Coker, Tex.Civ. App., 111 S.W.2d 357; Jennings v. Jennings, Tex.Civ.App., 212 S.W. 772, 44 Tex. Jur., at Page 576; Taylor v. Small, Tex. Civ.App., 71 S.W.2d 895; 44 Tex.Jur., Page 588; and Pierson v. Pierson, Tex. Civ.App., 57 S.W.2d 633, 636, where the Court said: "Undue influence cannot be presumed or inferred from opportunity or interest, but must be proved to have been exercised, and exercised in relation to the will itself, and not merely to other transactions."

The point that the boiled-down effect of all the evidence is as indicated, need not be labored, because appellees themselves thus admitted it: "The appellant comments that there is no direct evidence that J. M. Lynn practiced undue influence on the testatrix. This is true."

So that, citing Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, and many other similar cases as authority for it, they then fall back upon their contention that, "Undue influence can be established by circumstantial, as well as by direct evidence." They thus narrow their whole case to the claim that the undue influence they prescribe upon was a general "dominating-of" and "domineering-over" Mrs. Lynn by Mr. Lynn throughout their married-life, in well-nigh everything they did, continuously up to and including such joint-execution of their will, as that transaction has hereinbefore been set out, under the undisputed facts attending it; that, because of the

ever-present and continuing effect of that domination, she was left in such a subjugated and enslaved mental condition that she could only—in so signing such a will—reflect his will, and not her own.

This Court cannot see it that way. With all due deference to the Supreme Court's holdings in the case of Long v. Long, supra, so cited and relied upon by the appellees, et id omne genus, that opinion rested upon essentially different facts from those so undisputedly appearing in this instance. This quotation from it at page 1037 of 125 S.W.2d, Column 1, bottom, and top of Column 2, constitutes a complete differentiation of it:

"Boiled down, we have this case before us: Mrs. Long at the time this will was executed was in a very weakened condition. Frank O. Long mainly looked after her business affairs. Frank O. Long went to an attorney and had his mother's will written. He gave the attorney full instructions as to how to write such will. According to natural law, the will is unfair to this contestant, and gives Frank O. Long more than he would have gotten under the laws of descent and distribution. Frank O. Long paid the attorney for writing the will; he carried him to the home of the testatrix; he carried him back after the will was signed; he took charge of the will after it was signed; the testatrix signed the thing that was presented to her, without question or suggestion; Frank O. Long had every opportunity to unduly influence his mother, as he was constantly with her, and constantly attended to her business; and the will is not a natural one according to moral law. At least, the jury could have so found. We think that the above facts constitute some evidence of undue influence. In this regard, we think that Frank O. Long's actions with reference to having this will drawn can be considered with tremendous force against him, and against the will."

No matter how liberal the rule in the admission of claimed-evidence of undue influence should be, the proffered testimony of it must have a bearing somewhere, and in this instance, as indicated, there was not only nothing tangible with reference to the execution of this will about the "domination" and "domineering" relied-upon as its sole manifestation, but there was the affirmative ousting of its possible application by the undisputed and positive testimony the other way of the only persons having any knowledge of this transaction at the time it occurred.

In other words, granting that such domination throughout the married-life of Mr. and Mrs. Lynn was such a brooding-presence, the indisputable evidence in the record here shows that it was not applied to at least this one joint-transaction of their lives.

This appellant did not declare upon such will as a contract, nor was any issue raised by him as to whether it could or could not have been revoked by the survivor; this, because of the fact that these matters were eliminated, because Mrs. Lynn lived about a year after the death of her husband, and despite her good mind, which the appellees also concede, she had never revoked nor attempted to revoke the will.

In place of this theoretical supposition, as this Court sees it, there was here undisputed evidence that Mrs. Lynn had made a will that was in accord with her own wishes, hence that will, as held by this Court in Wallace v. Peoples et al, 89 S.W.2d 1030, and authorities there cited, should be sustained.

Further discussion is deemed unnecessary since these conclusions determine the merits of the appeal; they require that the judgment of the trial court be reversed, and the cause here rendered in appellant's favor. It will be so ordered.

Reversed and rendered.